IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRAXIS PRECISION MEDICINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1256-RGA |
| | ) | |
| DAVID B. GOLDSTEIN and ACTIO | ) | |
| BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) and/or 12(b)(6)**

OF COUNSEL:
W. Chad Shear
Reem Gerais
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
(858) 490-6000

Daniel J. Knauss
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Brittany N. Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800

Dated: December 5, 2025

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants David B.
Goldstein and Actio Biosciences, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF THE ARGUMENT ........................................................ 1

III.    STATEMENT OF FACTS ........................................................ 2

    A.    The Compounds in Question - KCNT1 Inhibitors ........................................ 2

    B.    Praxis' Complaint and Trade Secret Allegations ...................................... 3

    C.    Praxis Extensively Published Its KCNT1 Inhibitors Before Actio Even Existed........................................................................................ 5

    D.    Praxis' Allegedly Trade Secret Compounds Differ from Its Own Publicly Disclosed Compounds in Ways Praxis Characterizes as "Minor".................. 7

    E.    Actio Independently Identified KCNT1 as a Drug Target and Independently Developed Its Own Distinct KCNT1 Inhibitors .......................... 9

IV.    LEGAL STANDARDS ........................................................ 10

    A.    Information "Generally Known" or "Readily Ascertainable by Proper Means" Cannot Be a Trade Secret under the Defend Trade Secrets Act........... 10

    B.    Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction...................... 10

    C.    Rule 12(b)(6) Dismissal for Failure to State a Claim ........................................ 11

V.    ARGUMENT ........................................................ 12

    A.    Praxis' Complaint Should Be Dismissed Because Its Pleaded Allegations Show It Cannot Establish Jurisdiction Through a DTSA Protectable Trade Secret........................................................................................ 12

        1.    Under Praxis' Theory of Minor Modifications, the Alleged Trade Secrets Are Readily Ascertainable from Praxis' Publicly Disclosed Compounds ........................................................ 12

        2.    Subject Matter Jurisdiction Is Lacking Because Praxis' Allegedly Trade Secret Compounds Cannot Qualify for Protection under DTSA ........................................................ 15

    B.    Alternatively, Praxis' Counts I-IV Should Be Dismissed Under Rule 12(b)(6) ........................................................ 16

        1.    Praxis' Allegedly Trade Secret Compounds Do Not Plausibly Qualify for DTSA Trade Secret Protection .............................. 16

        2.    Praxis Does Not Plausibly State a Claim for Misappropriation ............. 17

    C.    Praxis' Claims in Counts II-IV Are Pleaded Only Supplementally and Should Also Be Dismissed ........................................................ 19

VI.    CONCLUSION........................................................ 20

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
707 F.3d 1318, 1329 (Fed. Cir. 2013)......................................................................15

*Alston v. State of Del.*,
No. 23-1132-GBW, 2024 WL 3066907 (D. Del. June 20, 2024)..........................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................11, 18

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,
473 F.3d 506 (3d Cir. 2007)......................................................................................11

*Battaglia Mgmt., Inc. v. Abramowicz*,
No. 23-615-GBW, 2024 WL 3183063 (D. Del. June 26, 2024)............................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................11, 18

*Berkadia Real Est. Advisors v. Wadlund*,
No. 22-00049-TUC-CKJ, 2022 WL 3213113 (D. Ariz. Aug. 9, 2022)..................17

*Borough of W. Mifflin v. Lancaster*,
45 F.3d 780 (3d Cir.1995).........................................................................................20

*United States ex rel Denis v. Medco Health Sols, Inc.*,
No. 11-684-RGA, 2017 WL 63006 (D. Del. Jan. 5, 2017).....................................20

*Elias Ind., Inc. v. Kissler & Co., Inc.*,
No. 2:20-cv-01011-CCW, 2021 WL 2141509 (W.D. Pa. May 26, 2021)..............15

*Gotha v. United States*,
115 F.3d 176 (3d Cir. 1997)......................................................................................11

*Hedges v. Musco*,
204 F.3d 109 (3d Cir. 2000)......................................................................................20

*Kuhn Const. Co. v. Diamond State Port Corp.*,
No. 10-637-SLR, 2012 WL 512612 (D. Del. Feb. 14, 2012) .................................20

*Medquest Ltd. v. Rosa*,
No. 21 Civ. 5307 (PGG), 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023)..............16

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)................................................................................11, 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977)..................................................................................11

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
    855 F. App'x 701 (Fed. Cir. 2021) .......................................................................15

*R.J. Heating Co. v. Rust*,
    No. 1:22-CV-00710, 2024 WL 1307114 (N.D. Ohio Mar. 27, 2024) ....................16

*Samsung Elecs. Co. v. On Semiconductor Corp.*,
    541 F. Supp. 2d 645 (D. Del. 2008)......................................................................11

*SouthStar Expl., LLC v. 7C Land & Mins.*,
    Co., No. CIV-17-517-SLP, 2018 WL 8755873 (W.D. Okla. Mar. 15, 2018) ........16

*Space Data Corp. v. X*, Civ. No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,
    2017) .....................................................................................................................17

*TECH USA, Inc. v. Milligan*,
    No. RDB-20-0310, 2021 WL 795151 (D. Md. Mar. 1, 2021)................................16

**Statutes**

6 Del. C. § 2001(4) .............................................................................................................10

18 U.S.C.
    § 1836....................................................................................................................10
    §§ 1836(b)(1) ........................................................................................................10
    § 1839................................................................................................................2, 10, 15

28 U.S.C.
    § 1331......................................................................................................................3
    § 1332......................................................................................................................3
    § 1367......................................................................................................................3

Defend Trade Secrets Act ......................................................................................... *passim*

Del. Uniform Trade Secret Act.................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P.
    12(b)(1) .......................................................................................................... *passim*
    12(b)(6) ..........................................................................................................2, 11, 16
    12(h)(3) ..................................................................................................................10

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

WO 2020/227101 A1 ...................................................................................................................6

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Praxis filed this action against Dr. Goldstein and Actio (together "Defendants").  (D.I. 2 ("Compl.").)  The Complaint alleges that both Defendants misappropriated trade secrets in violation of the Defend Trade Secrets Act ("DTSA") and the Delaware Uniform Trade Secret Act ("DUTSA"); it also alleges that Dr. Goldstein breached a contract with Praxis.  (Compl. ¶¶87-126.)  Defendants now move under Federal Rule of Civil Procedure 12(b)(1) and, alternatively, 12(b)(6) to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## II.    SUMMARY OF THE ARGUMENT

Based solely on "information and belief," citing no actual evidence, Praxis alleges that Defendants misappropriated its trade secrets to develop KCNT1 inhibitor compounds.  But Praxis does not allege that Defendants copied a single Praxis compound.  Instead, the allegation is based solely on purported structural "similarities" between some of the Praxis and Actio compounds.  (Compl. ¶¶72, 75.)[1]  Two things being "similar" certainly isn't sufficient, without more, to support an allegation of trade secret misappropriation, so, to try to bridge that gap, Praxis alleges that the structural differences between its compounds and Actio's would be considered trivial by a medicinal chemist.[2]  Therefore, as Praxis would have this Court believe, Defendants must have misappropriated Praxis' trade secrets in violation of the law.  The problem with Praxis' position is what it chose **not** to share with the Court, namely that, before Actio ever existed, Praxis publicly disclosed **millions** of structurally "similar" compounds both in a scientific journal and in a patent application.  Applying Praxis' logic, those publicly disclosed compounds are indisputably as

---

[1] All quotations, information, and chemical structures drawn from Praxis' Complaint are present in the publicly-filed redacted copy of the Complaint (D.I. 6), accordingly this motion is not being filed under seal.

[2] While Defendants vehemently dispute the notion that the differences would be considered trivial, for purposes of this motion, Defendants, as they must, accept Praxis' allegation as true.

structurally "similar" to Actio's as those compounds Praxis chose to disclose to the Court. Information cannot be a trade secret if it is "generally known" or "readily ascertainable by proper means." *See* 18 U.S.C. § 1839. The indisputable facts about Praxis' publication of its compounds coupled with its pleaded allegations show that Praxis has no trade secret claim to provide this Court with subject matter jurisdiction, and thus dismissal is required under Rule 12(b)(1). These facts also show that Praxis fails to state any plausible claim for relief and provide an alternative route to dismissal under Rule 12(b)(6). The remaining state law claims pleaded only supplementally should also be dismissed.

To be clear, Actio *does not agree* that its unique compounds are not markedly distinct from any Praxis compound, public or confidential, or that its own compounds were not inventive. But at this motion to dismiss stage Praxis' allegations must be taken as true, and in that light it is clear that Praxis cannot make out a trade secret claim under the law. If this case is not dismissed, discovery will resoundingly prove that Defendants did not misappropriate any Praxis confidential information, and that all of Actio's compounds were independently developed by Actio inventors (other than Dr. Goldstein). But such proof should not be required because the Complaint is so fatally flawed that it should be dismissed.

## III.    STATEMENT OF FACTS

### A.    The Compounds in Question - KCNT1 Inhibitors

KCNT1 is a gene involved in severe, rare pediatric epilepsies. Mutations of KCNT1 can cause seizures beginning in infancy accompanied by severe delays and neurological impairments. KCNT1-related epilepsy is a devastating disorder with no effective approved treatment. Compounds that inhibit KCNT1 are potential treatments for KCNT1-related epilepsy.

### B. Praxis' Complaint and Trade Secret Allegations

Praxis' Complaint alleges misappropriation of trade secrets by both Defendants under the DTSA and the Delaware Uniform Trade Secret Act, and two counts of contract breach under Delaware law by Dr. Goldstein which are entirely based on the same set of facts. The Complaint's only basis for subject matter jurisdiction is 28 U.S.C. § 1331 federal question jurisdiction as to DTSA Count I and § 1367 supplemental jurisdiction as to the remaining state law Counts II-IV. (Compl. ¶11.) Praxis did not plead diversity jurisdiction under § 1332.

Praxis admits on the cover of its Complaint that "all" matters other than as to its own actions are pleaded purely on information and belief. (Compl. at 1.) Perhaps unsurprisingly given this admission, none of Praxis' allegations concerning the actions of either defendant are supported by any evidence whatsoever. Instead, Praxis speculates misappropriation must have occurred because of supposed structural "similarity" between certain confidential Praxis KCNT1 inhibitors and a set of Actio KCNT1 inhibitors with different structures. These accused Actio compounds are described in a pair of Actio pending patent applications that were filed years after Praxis' public disclosures. (Compl. ¶65.) These applications list only Actio chemists Nicholas Stock and Steven Govek as inventors; Dr. Goldstein is not listed as an inventor.

In Complaint ¶¶69-70, Praxis identifies 14 of its allegedly trade secret compounds, and accuses 17 Actio compounds as being based on the misappropriation of those Praxis compounds. But not a single one of these compounds is a match, and a simple comparison by eye reveals apparent structural differences between each Praxis compound and its so-called Actio "counterpart." For example, all Praxis compounds have a single central ring, while every accused Actio compound instead has a "bicyclic" structure of two central rings (regions shaded in orange):



(Compl. ¶70.)

And beyond this difference, the Actio compounds also have a significant number of *other* structural differences from the allegedly trade secret Praxis compounds. As a result, Praxis does not and cannot allege that Actio copied any of its compounds.

Faced with this problem, Praxis makes allegations which doom its Complaint. Praxis alleges each of the differences between supposedly trade secret Praxis compounds and the accused Actio compounds are "minor," and that "in the context of these molecules, these changes in chemical structure would naturally occur to a medicinal chemist performing development work." (Compl. ¶74.) The gamut of chemical modifications that Praxis alleges are "minor" and would "naturally occur" to a chemist broadly include "differences in the location or identity of the non-carbon atoms in the lefthand ring of the core" and so-called "slight differences in the functional groups in the side of the molecule." (*Id.*)

Praxis goes even further. Because none of Praxis' allegedly trade secret compounds have "bicyclic" center like the Actio compounds, Praxis argues that this change, too, is a "commonplace variation" where neighboring atoms in the Praxis compounds are brought together in a step Praxis calls "ring closing."[3] Praxis alleges such "ring closing" is a "simple modification … that would naturally occur to a medicinal chemist performing development work." (Compl. ¶72.) As detailed

---

[3] Notably, the diagram Praxis relies on as an example of "ring closing" in Compl. ¶72 is lifted from an *Actio* patent application — it is not taught in any Praxis disclosure, and Praxis never alleges it has any trade secret in "ring closing" or that Actio misappropriated it from Praxis.

below, these admissions are fatal to Praxis' Complaint because they show that Praxis' allegedly

trade secret compounds are readily ascertainable from its own public disclosures.

### C.    Praxis Extensively Published Its KCNT1 Inhibitors Before Actio Even Existed

On March 9, 2021, Praxis published a detailed article in the scientific journal ACS

Medicinal Chemistry Letters, entitled "Discovery of the First Orally Available, Selective $K_{Na}1.1$

Inhibitor: *In Vitro* and *In Vivo* Activity of an Oxadiazole Series" and listing Praxis scientist

Andrew M. Griffin as lead author.[4]  (Ex. 1.)[5]  In the Griffin article, Praxis publicly revealed at

least 34 related KCNT1 inhibitor compounds and provided extensive experimental data for each

compound and information useful to drug developers such as solubility, bioavailability, and other

characteristics.  Praxis makes no mention of Griffin in its Complaint.

One of the compounds disclosed in Griffin is "Compound 31":



**Compound 31**

$hK_{Na}1.1$-WT $IC_{50} = 40$ nM

(*Id.*, 593.)  Praxis openly admitted in the Griffin 2021 article that it considered Compound 31 the

most promising of the many compounds disclosed, highlighting its structure on the article cover

and disclosing that Praxis "selected [it] as a candidate to characterize further."  (*Id.*, 593, 598.)

---

[4] This Court may consider disclosures outside the pleadings such as Griffin if it elects to treat Defendants' Rule 12(b)(1) motion as a factual attack on jurisdiction, and may also take judicial notice of the teachings apparent from the article, as explained in Defendants' concurrently filed request for judicial notice.  *See* Section IV-B, *infra*.

[5] "Ex.__" refer to the Exhibits attached to the Declaration of W. Chad Shear in support of Defendants' Motion to Dismiss, filed contemporaneously herewith (hereinafter "Decl.").

The Griffin article also discloses many modifications that can be made to the structure of Compound 31, including variations of the atoms in the central ring, and changes to the functional groups of the rings on the left and righthand sides of the compounds. (*Id.*, Tables 1-3, 595-97.)

Beyond the many detailed disclosures in Praxis' Griffin 2021 article, Praxis also sought protection for Compound 31 and several other compounds, and *millions* of modifications of those compounds, in a patent application which was published and available to the world on November 12, 2020. (Ex. 2 (WO 2020/227101 A1).)[6]  In this over 400-page application, Praxis disclosed the same "series" of compounds taught in Griffin, including the structure of Compound 31, and provided extensive disclosures of modifications to be made at a multitude of locations on these compounds. (*See, e.g.*, Ex. 2, disclosing modifications to functional groups on the left ring region (at 256 (Cpd. 203), 264 (Cpd. 207), 293-96 (Cpds. 227-230), 352-55 (Cpds. 273-277), 361-65 (Cpds. 303-306), 370 (Cpd. 310)); modifications to carbon atoms around the central ring (at 161 (Cpds. 108-109), 319 (Cpd. 248), 342 (Cpd. 265), 343-44 (Cpd. 266), 357-58 (Cpd. 300), 359 (Cpd. 302)); and various changes in the 3-D position, but not identity, of groups near central ring (88 (Cpds. 38-39), 90-91 (Cpds. 42-43), 103 (Cpds. 56-57), 122 (Cpds. 74-75), 182 (Cpd. 131), 190-92 (Cpds. 138-139), 195 (Cpd. 142), 217 (Cpds. 172-175).) As with the Griffin article, Praxis attempted to conceal this publication from the Court by omitting mention of it in its Complaint.

These public disclosures by Praxis occurred well before Actio even existed; Praxis admits that Actio was not incorporated until July 20, 2021. (Compl. ¶63.) Indeed, the Actio patent applications that are the sole basis of all of Praxis' misappropriation allegations were not even filed until November 2023.

---

[6] This Court may consider the disclosures apparent in Praxis' WO 2020/227101 publication on a Rule 12(b)(1) motion, and may also take judicial notice of them.

**D.    Praxis' Allegedly Trade Secret Compounds Differ from Its Own Publicly Disclosed Compounds in Ways Praxis Characterizes as "Minor"**

As noted above, Praxis' only theory of misappropriation requires it to allege that the differences between its supposedly secret compounds and Actio's compounds are all "minor." This allegation destroys Praxis' ability to show it has any trade secrets because of its own earlier public disclosures.

Take as just one example Praxis' allegedly trade secret compound PRX-5525 highlighted in Complaint ¶79.    Praxis alleges misappropriation based on a supposed "striking structural resemblance" with Actio's I-42a compound (Compl. ¶ 70):



But by this same rationale, PRX-5525 is readily ascertainable by starting from Praxis' publicly disclosed Compound 31 and performing modifications that Praxis alleged are "minor":



As the above comparison shows, the two compounds have nearly identical structures.    The lefthand region shaded in blue and the righthand region shaded in purple are exactly the same.    The

central region shaded in orange has differences in the nitrogen and oxygen atoms, but Praxis alleges that "differences in the location or identity of the non-carbon atoms" in this ring of the core are "minor" and "would naturally occur to a medicinal chemist." (Compl. ¶ 74.) Moreover, changes to the N and O atoms in this ring are also disclosed in Griffin. (*See* Section III.C, above; Ex. 1 (Griffin), 595 at Table 1, Compounds 9-11.) Similarly, the two additional carbon atoms added to the orange-shaded ring in PRX-5525 are akin to the "ring closing" modification that Praxis similarly alleges is a "simple modification" that would "naturally occur to a medicinal chemist." (Compl. ¶72.)

As another example, compare Compound 31 with allegedly trade secret PRX-6720:



Here again, the purple-shaded region on the right is identical. The blue shaded region on the left has only one modification, but again Praxis alleges that "slight differences in the functional groups in the side of the molecule" would "naturally occur to a medicinal chemist." (Compl. ¶74.) This exact change is also disclosed in Compound 27 of Griffin. (Ex. 1, 597 at Table 3.) And as with the preceding comparison, the modification in the central, orange-shaded ring is again of the type Praxis characterizes as "minor." (Compl. ¶74.)

Examination of each of the allegedly trade secret Praxis compounds in Complaint ¶¶69-70 reveals the same pattern — each molecule often has nearly all of its structure in common with Compound 31 (or in common with one of the other related compounds disclosed in Griffin and/or Praxis' 2020 published application). *See* Section III.C, above. To the extent the molecules differ, they differ in "minor" ways that Praxis has alleged "would naturally occur to a medicinal chemist."

###    E.    Actio Independently Identified KCNT1 as a Drug Target and Independently Developed Its Own Distinct KCNT1 Inhibitors

Actio develops transformational medicines by applying insight gained from rare disease populations to more common diseases. Praxis' allegations of misappropriation are based on pure speculation, but the reality is that Actio's molecules reflect significant investments of time and resources in developing compounds that Praxis never claims to have made itself.

In 2022, following its rare-to-common disease-selection process, Actio identified KCNT1 as a promising target. Actio chemists (not Dr. Goldstein) then researched the public scientific literature for compounds already known to target KCNT1. This led them to Praxis' published Griffin article and several compounds from other research groups. Through comparative testing of these compounds, the chemists confirmed that Compound 31 from the Griffin article was a suitable starting point for further inventive development of novel KCNT1 inhibitors.

Actio's chemists then began making scores of their own modifications to Compound 31 based on their ideas for how to improve efficacy. Their goal was to find new chemical entities that inhibited all of the numerous KCNT1 mutants that cause epilepsy, so a single therapeutic could be used for all patients. One of their key insights, realized through design and preparation of over 1,350 different compounds and testing against twenty KCNT1 mutants, was to add a bicyclic structure of two rings in the center of the structure. This change is theorized to limit movement within the compound structure, which may "lock" it in a more potent configuration.

These independent efforts eventually culminated in Actio's first-in-class KCNT1 inhibitor, ABS-1230.

## IV.    LEGAL STANDARDS

### A.    Information "Generally Known" or "Readily Ascertainable by Proper Means" Cannot Be a Trade Secret under the Defend Trade Secrets Act

The Defend Trade Secrets Act ("DTSA"), codified in 18 U.S.C. § 1836, provides a federal cause of action for misappropriation of a trade secret.  18 U.S.C. §§ 1836(b)(1); 1836(c).  The DTSA's definition of "trade secret" requires that:

> (B) the information derives independent economic value, actual or potential, from **not being generally known to, and not being readily ascertainable through proper means** by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839 (definition (3)), (emphasis added).  The DTSA is thus clear that information, if it is generally known or readily ascertainable through proper means, cannot be a trade secret protectable by assertion of a federal civil action.[7]  To recover under the DTSA, a plaintiff must demonstrate both (1) the existence of a trade secret, and (2) misappropriation of that trade secret. *See Battaglia Mgmt., Inc. v. Abramowicz,* No. 23-615-GBW, 2024 WL 3183063, at *3 (D. Del. June 26, 2024).

### B.    Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a district court may grant a motion to dismiss for lack of subject matter jurisdiction, and pursuant to Rule 12(h)(3), it must dismiss an action at any time it determines it lacks subject matter jurisdiction.  In deciding a 12(b)(1) motion, if the court finds that the defendant has presented a factual rather than facial challenge to its jurisdiction, the court is not limited to the allegations in the complaint but may also consider such evidence as affidavits

---

[7] The Delaware Uniform Trade Secrets Act has the same provision.  *See* 6 Del. C. § 2001(4).

and testimony "to resolve any factual issues bearing on jurisdiction." *Samsung Elecs. Co. v. On Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008) (*citing Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)); *see also United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). This motion presents only two pieces of evidence that Praxis withheld from its Complaint: its 2021 Griffin article and its patent application published in 2020, both of which are also properly subject to judicial notice.

### C.   Rule 12(b)(6) Dismissal for Failure to State a Claim

A district court may dismiss an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Stating a claim "requires more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the plaintiff must include sufficient factual allegations to state a claim that is above a speculative level and plausible on its face. *Id*. at 555, 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a 12(b)(6) motion, the Court takes as true all allegations of material fact in the complaint and draws reasonable inferences in the light most favorable to the nonmoving party, but the court need not accept bald assertions or legal conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The Court may also consider matters beyond the pleadings that are subject to judicial notice, such as the existence and content of published articles and public records such as patent applications, as explained in Defendants' concurrent request for judicial notice.

V.    **ARGUMENT**

    A.    **Praxis' Complaint Should Be Dismissed Because Its Pleaded Allegations Show It Cannot Establish Jurisdiction Through a DTSA Protectable Trade Secret**

Praxis alleges that the structures of its supposedly trade secret compounds and the accused Actio compounds are "so similar" that Actio could not have independently developed its accused compounds without misappropriation. (Compl. ¶75.) The brazenness of this allegation becomes clear in view of the extensive disclosures by Praxis of its own KCNT1 inhibitors, which Praxis concealed from this Court by omitting them from its Complaint. As explained below, starting from these indisputably public disclosures and applying Praxis' own allegations of how medicinal chemists make "commonplace variations" leads to the inescapable conclusion that the compounds Praxis calls trade secrets are readily ascertainable and thus not protectable as trade secrets.

    1.    **Under Praxis' Theory of Minor Modifications, the Alleged Trade Secrets Are Readily Ascertainable from Praxis' Publicly Disclosed Compounds**

As explained above in Section III.C, Praxis published scores of promising KCNT1 inhibitors in its 2021 Griffin publication; it also disclosed those molecules plus millions of further modifications of them in its corresponding 2020 published patent application. Praxis was clear to the world that Compound 31 was highly promising as a potential lead for further drug development because it exhibited potent KCNT1 inhibition and other favorable properties.

Praxis recognizes that none of the accused Actio compounds are copies of its allegedly trade secret compounds, so Praxis is forced to justify its speculative claim that Actio's unique compounds were derived from those Praxis compounds. In doing so, Praxis makes several allegations[8] that are fatal to its trade secret claim: *First*, Praxis alleges that "differences in the

---

[8] As noted above, Defendants strenuously disagree with Praxis' allegations about how chemical inventions are made and whether certain modifications are indeed "commonplace variations." But,

location or identity of non-carbon atoms in the lefthand ring of the core" are all changes that "would naturally occur to a medicinal chemist." (Compl. ¶74.) *Second*, Praxis alleges that "slight differences in the functional groups in the side of the molecule" are also "changes in chemical structure [that] would naturally occur to a medicinal chemist performing development work." (*Id*.) *Third*, even though none of Praxis' allegedly trade secret compounds have a bicyclic center, Praxis alleges that this change also is a "simple modification … that would naturally occur to a medicinal chemist." (Compl. ¶72.)

As detailed above in Section III.D, under Praxis' theories of "minor" differences and modifications, each of Praxis' allegedly trade secret compounds would be, according to Praxis, structures that would "naturally occur" to a medicinal chemist as modifications of its Compound 31. For example, Praxis' allegedly trade secret PRX-6720 closely resembles Compound 31:



The only modifications necessary to convert Compound 31 to PRX-6720 are changes that Praxis has characterized as "minor" and "commonplace": "differences in the location or identity

---

for the purposes of this motion, those allegations must be taken as true in evaluating whether Praxis can make a trade secret claim under the law.

of non-carbon atoms in the lefthand ring of the core" and modification of the central core for "ring

closing" (orange shaded region) and "slight differences in the functional groups in the side of the

molecule" (blue shaded region). In every other respect, PRX-6720 is identical to Compound 31.

Indeed, even beyond Praxis' allegations, the Griffin article also makes similar disclosures.

For example, Griffin discloses altering and moving the nitrogen and oxygen atoms of the orange-

shaded five-membered central ring, in Compounds 9, 10, and 11:

| | |
|---|---|
| **9** | |
| **10** | |
| **11** | |

(Ex. 1, 595-96 at Table 1.) Griffin also discloses in Compound 27 the same substitution in the

blue shaded region:



| | |
|---|---|
| **27** | |

(*Id.*, 597 at Table 3). These disclosures illustrate that Praxis chose to teach the world alternatives

to its KCNT1 inhibitors that a chemist could make. Praxis' own allegations hold that any

differences between those public compounds and its allegedly trade secret compounds are mere

"commonplace variations." Each of the allegedly trade secret Praxis compounds in Complaint

¶¶69-70 reveal the same pattern — each molecule often has nearly all of its structure in common with Compound 31 (or in common with one of the other related compounds disclosed in Griffin and/or Praxis' 2020 published application).  *See* Section III.D, above.  To the extent the molecules differ, they differ in "minor" ways that Praxis has alleged "would naturally occur to a medicinal chemist," *i.e.*, they are "readily ascertainable through proper means."

### 2.      Subject Matter Jurisdiction Is Lacking Because Praxis' Allegedly Trade Secret Compounds Cannot Qualify for Protection under DTSA

Information that is readily ascertainable from public disclosures such as scientific articles and published patent applications cannot be a trade secret under the DTSA.  18 U.S.C. § 1839; *see also Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013) ("As a matter of law, any specifications and tolerances disclosed in **or ascertainable from** the asserted patents became publicly available in October 2005 when the '877 patent application was published and, as such, could not constitute a trade secret in early 2006 when Leggett is alleged to have engaged in misappropriation.") (emphasis added); *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 707 (Fed. Cir. 2021) ("Information in published patents or patent applications is readily ascertainable by proper means.")

Praxis published Compound 31 and dozens of variants in its March 2021 Griffin article; its corresponding patent with millions of modifications of its KCNT1 inhibitors was published in November 2020.  Actio did not even exist until June 2021, and the Actio patent applications that provide the sole basis for Praxis' speculative allegations of misappropriation were not *filed* until November 2023.  Thus, during the entire time that Actio existed, all of Praxis' allegedly trade secret compounds were readily ascertainable from Praxis' own publications coupled with Praxis' allegations of how chemical modifications are made.  Praxis has thus pleaded itself out of court, and none of its compounds can qualify for trade secret protection under the DTSA.  *See, e.g., Elias*

*Ind., Inc. v. Kissler & Co., Inc.*, No. 2:20-cv-01011-CCW, 2021 WL 2141509, at \*5-6 (W.D. Pa.
May 26, 2021) (dismissing DTSA and Pennsylvania UTSA claims at the pleadings stage because
alleged trade secrets were readily ascertainable; *see also Medquest Ltd. v. Rosa*, No. 21 Civ. 5307
(PGG), 2023 WL 2575051, at \*4-5 (S.D.N.Y. Mar. 20, 2023).

When, as here, a Complaint's only basis for subject matter jurisdiction is a defectively
pleaded DTSA claim, the Court should dismiss the Complaint.  *See, e.g.*, *R.J. Heating Co. v. Rust*,
No. 1:22-CV-00710, 2024 WL 1307114, at \*4 (N.D. Ohio Mar. 27, 2024) (dismissing DTSA claim
on Rule 12(b)(1) grounds for failure to adequately plead a trade secret distinct from what was
generally known or readily ascertainable in the field); *SouthStar Expl., LLC v. 7C Land & Mins*.,
Co., No. CIV-17-517-SLP, 2018 WL 8755873, at \*4 (W.D. Okla. Mar. 15, 2018) (dismissing
DTSA claim under Rule 12(b)(1) and 12(b)(6) where plaintiff failed to "plead[] sufficient factual
matter to state a DTSA claim and therefore invoke the Court's subject-matter jurisdiction"); *TECH
USA, Inc. v. Milligan*, No. RDB-20-0310, 2021 WL 795151, at \*4 (D. Md. Mar. 1, 2021)
(dismissing DTSA claims under 12(b)(1)).

### B.     Alternatively, Praxis' Counts I-IV Should Be Dismissed Under Rule 12(b)(6)

#### 1.     Praxis' Allegedly Trade Secret Compounds Do Not Plausibly Qualify for DTSA Trade Secret Protection

For the same reasons detailed in Defendants' arguments for dismissal under Rule 12(b)(1),
Praxis' trade secret claims also fail under Rule 12(b)(6) because they do not plausibly allege the
existence of compounds entitled to trade secret protection.  As explained above, all of Praxis'
allegedly trade secret compounds were reasonably ascertainable using Praxis' many disclosed
compounds as a starting point and making the kinds of structural modifications that Praxis alleges
any chemist would make.  *See* Section V.A.

Praxis has also failed to come forward with any plausible allegations to show that its alleged trade secrets are not readily ascertainable, as it is required to do. Indeed, Praxis' Complaint does not even mention the "not readily ascertainable" requirement except in the rote recitation of legal standards in its Counts. (Compl. ¶¶ 90, 101, 102.) These are exactly the type of bald assertions and legal conclusions that a court need not accept. *See Morse*, 132 F.3d at 906 n.8. As such, Praxis' trade secrets should be dismissed. *See, e.g.*, *Space Data Corp. v. X*, Civ. No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing DTSA and California UTSA claims that failed to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade."); *Berkadia Real Est. Advisors v. Wadlund*, No. 22-00049-TUC-CKJ, 2022 WL 3213113, at *10 (D. Ariz. Aug. 9, 2022) (dismissing trade secret claim for failure to plausibly plead why the alleged trade secrets were not readily ascertainable from indisputably public information.)

### 2. Praxis Does Not Plausibly State a Claim for Misappropriation

Praxis' claims also fail because they do not plausibly allege misappropriation. Praxis' Complaint begins with the telling admission that *all* of its allegations concerning both Defendants are *entirely* pleaded "on information and belief." (Compl. at 1.) The allegations that follow are entirely speculative and devoid of any shred of evidence that any misappropriation by either Defendant ever occurred. Praxis merely alleges, on information and belief, that Dr. Goldstein had "access to" certain unspecified documents allegedly containing unspecified Praxis confidential compounds. (Compl. ¶50.) Praxis then alleges, based on no evidence whatsoever, that Defendants misappropriated that information, even though Actio's work occurred years later, even though Dr. Goldstein is not listed as an inventor on the Actio patent applications Praxis relies on, and even though Actio's compounds are admittedly *different from* Praxis' compounds.

Thus, even if the various Praxis compounds in Complaint ¶¶69-70 were plausibly entitled to trade secret protection, which they are not, the Complaint still fails to make any plausible claim to misappropriation.  None of the Actio accused compounds are the same as any of the allegedly trade secret Praxis compounds, and Praxis does not identify a single fact (other than on information and belief) that Actio used any of those Praxis compounds as a basis for its own research.  Praxis' allegations that its allegedly trade secret compounds are "similar" to Actio's accused compounds are consistent at best with the mere speculative *possibility* of liability.  For example, there is nothing alleged in the Complaint other than bald and unsupported assertions to explain why Actio could not have arrived at the accused compounds through independent development as opposed to misappropriation, especially given Praxis' many public disclosures that Praxis concealed from the Court.  Allegations consistent only with the "**possibility**" of misappropriation do not suffice to cross the threshold to "**plausibility**" as the law requires.  *Iqbal*, 556 U.S. at 678 (emphasis added).  Nor can Praxis get over this hurdle by merely speculating that Defendants would take the implausible route of misappropriating Praxis' trade secrets as opposed to independently developing them, especially given that Actio has done nothing to hide its activities and instead has openly announced the structures of its KCNT1 inhibitors through its own patent filings.  Praxis' allegations thus fail to "raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555, 570.

Praxis will respond by pointing to its assertions that allege, with no support, that Actio could not have made the compounds disclosed in its pending patent applications without having misappropriated something from Praxis because Actio's patent application was *filed* 27 days after a Praxis November 2023 patent application.  (Compl. ¶¶75-76.)  But these allegations do not suffice to support a plausible claim for relief: they allege nothing about when, or how, Actio

actually developed its compounds. Indeed, Praxis admits that Actio could have developed its compounds in a matter of months (Compl. ¶76), and yet ignores that Praxis began publishing scores of its KCNT1 inhibitors in November 2020 and March 2021, *years* earlier than Actio's November 2023 patent filing. Thus, Praxis' allegations based on the mere timing of Actio's patent filings are insufficient to state a plausible claim for misappropriation.

The same is true for the entirely unsupported allegations that Actio must have used confidential Praxis compounds as a "template" to make Actio compounds such as I-42a. (Compl. ¶79.) These speculative allegations do not cross the threshold into plausibility, because Actio could just as well have used any number of other public Praxis compounds as a "template" and been free of any liability for misappropriation. Since the Praxis public compounds differ from the allegedly trade secret Praxis compounds only in ways that Praxis characterizes as "minor" and "commonplace," the only plausible conclusion to be drawn is that Defendants *did not* misappropriate, and the DTSA claim should be dismissed.

The same holds true for Praxis' remaining state-law claims in Counts II-IV — all of which are predicated on exactly the same operative facts as alleged by Praxis. These claims should all should be dismissed because they each fail to state any plausible claim for relief for the same reason that Praxis' DTSA claim fails — none of them plausibly allege the existence of a trade secret or any misappropriation sufficient for DUTSA Count II, nor do they suffice to plausibly allege breach of contract by Dr. Goldstein sufficient for Counts III and IV.

### C. Praxis' Claims in Counts II-IV Are Pleaded Only Supplementally and Should Also Be Dismissed

Praxis' state law claims for trade secret misappropriation and breach of contract are pleaded solely on a supplemental basis. When "the claim over which the district court has original jurisdiction is dismissed before trial," a Court must decline supplemental jurisdiction absent

exceptional circumstances involving judicial economy, convenience, or fairness. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995)). No such considerations exist here.

Delaware courts routinely decline to exercise supplemental jurisdiction where, as here, the case remains at an early stage, the parties have not engaged in discovery, and the Court has expanded limited resources on the matter. *See United States ex rel Denis v. Medco Health Sols, Inc.*, No. 11-684-RGA, 2017 WL 63006, at *13 (D. Del. Jan. 5, 2017); *Kuhn Const. Co. v. Diamond State Port Corp.*, No. 10-637-SLR, 2012 WL 512612, at *2 (D. Del. Feb. 14, 2012); *Alston v. State of Del.*, No. 23-1132-GBW, 2024 WL 3066907, at *3 (D. Del. June 20, 2024). Praxis' state law claims are just as meritless as its DTSA claim, but there is no jurisdictional reason such claims could not be pursued in the proper state forum. As such, dismissal of the DTSA claim leaves no affirmative justification for retaining jurisdiction over the remaining state law claims, and they too should be dismissed.

**VI.    CONCLUSION**

Defendants respectfully request dismissal of Plaintiff's Complaint.


                                                    */s/ Nathan R. Hoeschen*
                                                    Karen E. Keller (No. 4489)
OF COUNSEL:                                         Nathan R. Hoeschen (No. 6232)
W. Chad Shear                                       SHAW KELLER LLP
Reem Gerais                                         I.M. Pei Building
COOLEY LLP                                          1105 North Market Street, 12th Floor
10265 Science Center Drive                          Wilmington, DE 19801
San Diego, CA 92121                                 (302) 298-0700
(858) 490-6000                                      kkeller@shawkeller.com
                                                    nhoeschen@shawkeller.com
Daniel J. Knauss                                    *Attorneys for Defendants David B. Goldstein*
HanByul Chang                                       *and Actio Biosciences, Inc.*
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Brittany N. Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800

Dated: December 5, 2025