IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

PRAXIS PRECISION MEDICINES, INC.,          )
                                           )
                    Plaintiff,             )      **REDACTED - PUBLIC VERSION**
                                           )
        v.                                 )      C.A. No. 25-1256 (RGA)
                                           )
DAVID B. GOLDSTEIN and                     )      ███████████████
ACTIO BIOSCIENCES, INC.,                   )
                                           )
                    Defendants.            )

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

OF COUNSEL:

Keith R. Hummel
Sharonmoyee Goswami
Jonathan D. Mooney
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
khummel@cravath.com
sgoswami@cravath.com
jmooney@cravath.com

January 9, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Praxis Precision
Medicines, Inc.*

**CONFIDENTIAL VERSION FILED 1/9/26
REDACTED VERSION FILED 1/16/26**

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 2

II.   SUMMARY OF THE ARGUMENT ................................................................................... 2

III.  STATEMENT OF FACTS ................................................................................................. 3

IV.   LEGAL STANDARD ........................................................................................................ 6

V.    ARGUMENT ..................................................................................................................... 6

      A.    Defendants' Challenge to an Element of a DTSA Claim Does Not Deprive
            the Court of Subject Matter Jurisdiction. ................................................................ 7

      B.    Defendants' 12(b)(6) Argument Fails Because They Raise Factual
            Disputes, Not Pleading Deficiencies ..................................................................... 11

            1.    Praxis adequately pleaded that it has protectible trade secrets. ................ 12

            2.    Praxis adequately pleaded misappropriation. ........................................... 19

VI.   CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318 (Fed. Cir. 2013)..........................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................6

*Berkadia Real Est. Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2022
    WL 3213113 (D. Ariz. Aug. 9, 2022) ...............................................................19

*Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*, No. CV 23-328-JLH-CJB,
    2025 WL 2443517 (D. Del. May 1, 2025) ...................................................17, 19

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008)..............................................................6

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016)...............................................6

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016)...................................................6, 9, 10

*DermaFocus LLC v. Ulthera*, 201 F. Supp. 3d 465 (D. Del. 2016).................................19

*Disruptive Res., LLC v. Ballistic Barrier Prods. Inc.*, No. 1:24-CV-00321, 2025
    WL 2879447 (D. Del. Oct. 9, 2025) .................................................................13

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) .....................................................6, 14

*Elias Ind., Inc. v. Kissler & Co., Inc.*, No. 2:20-cv-01011-CCW, 2021 WL 2141509
    (W.D. Pa. May 26, 2021) ................................................................................10

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29 (3d Cir. 2018)............................7

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261 (3d Cir. 2016) ..................6, 14, 17

*Medquest Ltd. v. Rosa*, No. 21 Civ. 5307 (PGG), 2023 WL 2575051 (S.D.N.Y.
    Mar. 20, 2023).................................................................................................10

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ................................. passim

*Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701 (Fed. Cir. 2021) .........................10

*Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258 (D. Del. 2019) ...........................7

*R.J. Heating Co. v. Rust*, No. 1:22-CV-00710, 2024 WL 1307114 (N.D. Ohio Mar.
    27, 2024)..........................................................................................................11

*SouthStar Expl., LLC v. 7C Land & Mins., Co.*, No. CIV-17-517-SLP, 2018 WL
    8755873 (W.D. Okla. Mar. 15, 2018) ............................................................10

*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ...........................................................................................................................................19

*TECH USA, Inc. v. Milligan*, No. CV RDB-20-0310, 2021 WL 795151 (D. Md. Mar. 1, 2021)......................................................................................................................................10

**Statutes & Rules**

18 U.S.C. § 1836 ..............................................................................................................................7

18 U.S.C. § 1836(c) ......................................................................................................................2, 7

28 U.S.C. § 1331 .........................................................................................................................2, 7, 8

Defend Trade Secrets Act ....................................................................................................... passim

Delaware Uniform Trade Secrets Act ..............................................................................................2

Fed. R. Civ. P. 12(b)(1)........................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)........................................................................................................... passim

This case is about Defendants' theft and misuse of valuable confidential information and trade secrets owned by Plaintiff Praxis. Praxis develops innovative medications used to treat debilitating central nervous system disorders, such as epilepsy. Defendant David Goldstein—Praxis' co-founder, its former Global Lead Scientific Founder and former Chairman of its Scientific Advisory Board—had virtually unfettered access to Praxis' trade secrets. While still associated with Praxis, Goldstein launched Defendant Actio, and, of all the possible diseases to treat, chose as Actio's lead program the ultra-rare genetic epilepsy for which Praxis was already developing a treatment. Goldstein and Actio then used Praxis' trade secrets to develop compounds that will directly compete with Praxis' compounds. The Complaint provides numerous examples of the striking similarity between the Praxis and Actio compounds at issue.

This Court has subject matter jurisdiction over this case. Defendants do not dispute that the Complaint pleads, and supports with specific facts, each element of a Defend Trade Secrets Act ("DTSA") claim. That is enough to invoke federal question jurisdiction. Defendants' contention that a medicinal chemist could "readily ascertain" Praxis' trade secrets— allegedly rendering the trade secrets unprotectible—is a purported defense to the merits of Praxis' DTSA claim; it is not a basis to challenge jurisdiction. Indeed, if asserting a fact-based defense to a claim brought under a federal statute were sufficient to defeat jurisdiction, then every factual dispute underlying a federal question would invite a Rule 12(b)(1) challenge. That is not the law, as illustrated by Defendants' utter lack of legal authority for their novel position.

Defendants' attempt to dismiss under Rule 12(b)(6) is similarly meritless. The Complaint plausibly alleges all DTSA elements: it identifies specific, nonpublic Praxis trade secrets—its non-public compounds—and the reasonable measures Praxis took to maintain their secrecy, demonstrates that Goldstein had access to those trade secrets, alleges that he and Actio

1

misused them to develop competing compounds, and compares the Praxis and Actio compounds. Defendants essentially ignore all of that, and instead repeat the same fact-based attack that two of the 14 exemplary misappropriated Praxis compounds could allegedly be derived from public sources. Again, this is a purported defense to a plausible DTSA claim, not a basis for dismissal.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On October 14, 2025, Praxis sued Defendants for trade secret misappropriation under DTSA and Delaware's Uniform Trade Secrets Act ("DUTSA"), and for breach of contract. (D.I. 2 ("Compl.").) Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). (D.I. 16.)

## II.   SUMMARY OF THE ARGUMENT

1.    The Court has subject matter jurisdiction. Praxis brings a DTSA claim and invokes this Court's jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). Defendants' contention that Praxis' trade secrets are "readily ascertainable" from public disclosures is a fact-based merits attack on one element of the DTSA claim. The Third Circuit instructs that, when a defendant challenges jurisdiction by "attack[ing] facts at the core of the merits", a court should find that it has jurisdiction. Here, the issue of whether Praxis has protectible trade secrets is a contested question of fact that cannot be resolved by the Court on a motion to dismiss under Rule 12(b)(1). Specifically, the Praxis trade secret compounds differ dramatically from, and cannot be "readily ascertained" from the public Compound 31. Thus, Defendants' Rule 12(b)(1) motion should be denied, and their arguments should be considered, if at all, under Rule 12(b)(6).

2.    With respect to Rule 12(b)(6), Praxis plausibly alleges a DTSA claim. The Complaint identifies Praxis' trade secret compounds with particularity and alleges facts to support every other element of a DTSA claim. Defendants' sole attack on the claim is their contention that a medicinal chemist could "readily ascertain" the trade secret compounds by making "minor" modifications to published compounds. This raises disputed, factual issues that

cannot be resolved at this stage.  Whether a trade secret is already in the public domain or can be readily derived from information in the public domain is a quintessential defense to a trade secret case that must be determined by the trier of fact, not by the Court on a 12(b)(1) motion.

3.    The 12(b)(6) motion also fails because Defendants fail even to address the plausibility of Praxis' DTSA claim with respect to the vast majority of the compounds that Praxis alleges were misappropriated.  Defendants cherry-pick two compounds, presumably the "best" examples they could find, to argue that all of Praxis' trade secrets are "readily ascertainable".  Those two trade secret compounds, however, are vastly different than Compound 31.  And Defendants simply ignore the remaining 12 Praxis compounds, each of which provides an independent basis for finding a plausible DTSA claim.  They ignore those 12 compounds for a good reason—each has many differences from Compound 31 but are strikingly similar to Actio's copycat compounds.  For this additional reason, Defendants' 12(b)(6) motion should be denied.

## III.    STATEMENT OF FACTS

Praxis is an innovative biopharmaceutical company that develops therapies for debilitating central nervous system disorders.  (Compl. ¶¶ 2, 8.)  One focus of its development program is the creation of compounds to treat epilepsies caused by mutations in the KCNT1 gene that cannot be treated using conventional antiepileptic drugs.  *(Id.* ¶ 19, 22, 23.)

Praxis has invested substantial resources in its KCNT1 program.  (*Id.* ¶¶ 2, 30.)  It screened thousands of compounds to identify candidates that could inhibit KCNT1 activity.  (*Id.* ¶¶ 24–28.)  Praxis then performed extensive testing, over the course of years, to determine which compounds were suitable for clinical development.  (*Id.* ¶¶ 25–28.)  Through this sustained work, Praxis gained valuable trade secrets, "including the identity, formula, structure, properties and KCNT1-inhibiting activities" of its compounds.  (*Id.* ¶ 30.)  These trade secrets give Praxis a competitive advantage over its competitors, and their value would be dramatically reduced if

Praxis' competitors were to become aware of them. (*Id.* ¶¶ 33–34.) Praxis employs strict measures to protect its trade secrets from disclosure to others. (*Id.* ¶¶ 37–43.)

Defendants misappropriated these trade secrets. (*Id.* ¶ 81.) Goldstein had "essentially unfettered access" to confidential information about Praxis' KCNT1 development program. (*Id.* ¶ 50.) His agreements bound him to protect the confidentiality of Praxis' trade secrets, and not to disclose them or use them for any purpose other than Praxis' business activities. (*Id.* ¶ 51.) Praxis was shocked to discover that patent applications filed by Actio— which Goldstein founded while associated with Praxis—contained compounds that closely resemble Praxis' confidential and trade secret compounds. (*Id.* ¶¶ 68.) The striking structural near identity of Praxis' compounds and Actio's compounds makes independent development implausible and compels the conclusion that Goldstein and Actio misappropriated Praxis' trade secrets in developing Actio's compounds. (*Id.* ¶¶ 69–86.)

Praxis' Complaint provides 14 examples of Praxis compounds that were used by Actio to develop its compounds. (*Id.* ¶¶ 69–70.) Actio compounds contain minor differences that would have naturally occurred to a medicinal chemist who had knowledge of Praxis' compounds. For example, in the comparison below, the ***only*** difference between Praxis' PRX-5525 and Actio's copycat I-42a is the formation of a single chemical bond in the Actio compound that causes a "ring closing" (as shown in the yellow box). (*See id.* ¶ 72, 79.)



**Praxis PRX-5525**                    **Actio I-42a**

To support their sweeping claim that Praxis' compounds were readily ascertainable from public sources, Defendants argue that two Praxis compounds—PRX-5525 and PRX-6720—may be derived from the public Compound 31 (Br. 7). But, as discussed below, this is factually incorrect because Praxis' compounds show many significant differences from Compound 31. Moreover, Defendants simply ignore the Complaint's *12* other examples of copied compounds. For instance, ███████—which is virtually identical to Actio compounds █ ███████—was not addressed by Defendants in their brief and shows significant differences from Compound 31, including ███████████████, as shown below in the yellow box.



Also, the Complaint identifies ███████ as never being published. (Compl. ¶ 69.) ███████ and Griffin's Compound 31 have many differences that Defendants do not address. For example, ███████ has a ██████████ as part of its core, while Compound 31 has a ██████████ in the analogous location, as illustrated in the yellow boxes below.



(Br. at 7 (annotated); Compl. ¶ 69 (annotated).)  The Complaint never discusses such a ███

███████, let alone characterizes it as a "minor" modification.  Actio's copycat compounds, ███

█████████, both adopt █████████████████████. (Compl. ¶ 69.)

## IV.    LEGAL STANDARD

**Rule 12(b)(1)**:  A motion under Rule 12(b)(1) challenges a court's subject matter

jurisdiction.  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  "[A] district court must

take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion".  *Id.* at 348

(quoting *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008)).  "[D]ismissal via a Rule

12(b)(1) factual challenge to standing should be granted sparingly", such as "where the alleged

claim . . . clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or where such a claim is wholly insubstantial and frivolous".  *Id.* at 350 (internal

citation omitted).

**Rule 12(b)(6)**:  In deciding a Rule 12(b)(6) motion, a court is "required to accept

as true all allegations in the complaint and all reasonable inferences that can be drawn from them

after construing them in the light most favorable to the nonmovant".  *Hartig Drug Co. Inc. v.

Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal citation omitted).  The Federal

Rules "demand only a short and plain statement of the claim showing that the pleader is entitled

to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests".  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The proper place to resolve factual disputes

is not on a motion to dismiss".  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

## V.    ARGUMENT

This Court has federal question jurisdiction through the DTSA.  Defendants'

attempt to avoid that plain result is based solely on their contention that fact disputes exist with

respect to one element of the DTSA claim—whether Praxis' trade secrets are "readily ascertainable" from public materials. But the existence of a fact dispute about an element of a federal cause of action is hardly uncommon, and is not a valid basis to find a lack of subject matter jurisdiction. Defendants' fallback 12(b)(6) argument fares no better: the Complaint plausibly pleads all DTSA elements by identifying specific, nonpublic trade secrets; alleging reasonable secrecy measures; and alleging misappropriation through Defendants' access and a striking structural overlap between Praxis' compounds and Defendants'. Those well-pleaded allegations, which must be accepted as true, are sufficient to allege a plausible DTSA claim.

### A. Defendants' Challenge to an Element of a DTSA Claim Does Not Deprive the Court of Subject Matter Jurisdiction.

A proper 12(b)(1) motion is directed to ***jurisdictional*** facts that govern the Court's power to hear the case, such as whether complete diversity exists or whether a plaintiff has Article III standing. *See, e.g.*, *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 n. 5 (3d Cir. 2018) (analyzing the citizenship of a trust for diversity purposes under Rule 12(b)(1)); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 262 (D. Del. 2019) (analyzing standing under Rule 12(b)(1)). Defendants do not identify any jurisdictional pleading defect.

Nor could they. Praxis alleges subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) by asserting a cause of action created by federal statute, the DTSA, 18 U.S.C. § 1836. The DTSA itself provides that "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section." § 1836(c). A DTSA claim requires "(1) the existence of a trade secret . . . ; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret". *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal quotation marks and citations omitted). The Complaint alleges each: (1) it identifies nonpublic KCNT1-

inhibitor compounds and related information as trade secrets (Compl. ¶¶ 29–36, 69–70, 88); (2) alleges that these trade secrets are related to KCNT1-inhibitor therapeutics "which will be marketed and sold in interstate commerce" (Compl. ¶ 89.); and (3) alleges that Defendants misappropriated Praxis' trade secrets because Goldstein had access to them and because Actio's subsequent patent applications are directed to "strikingly similar" compounds.  (Compl. ¶¶ 44–80, 93–95).  That is sufficient to state a DTSA claim and to invoke this Court's jurisdiction.

Faced with the reality that this Court plainly has federal question jurisdiction, Defendants' resort to a partial factual attack on the ***merits*** of Praxis' DTSA claim.  Defendants assert that ***two*** of Praxis' compounds can be derived from a compound disclosed in the 2021 Griffin article.  Accordingly, in Defendants' view, ***all*** of Praxis' asserted trade secrets (including those that are not addressed in their motion) are "readily ascertainable".  (Br. 15–16.)  From that assertion, they argue that none of Praxis' trade secrets are protectible under the DTSA, and that such a failure on the merits deprives the Court of subject-matter jurisdiction.  (*Id*.)  But that chain of reasoning fails as a matter of law and logic.  In truth, Defendants' jurisdictional challenge is nothing more than an attack (and a partial one at that) on the merits of Praxis' DTSA claim.

Defendants do not identify any ***jurisdictional*** fact that could possibly defeat subject matter jurisdiction.  They cannot deny that federal question jurisdiction is proper under 28 U.S.C. § 1331 because the DTSA is a federal statute promulgated under federal law.  Nor do they argue that Praxis' claims are fictitious or frivolous.  Instead, their position rests entirely on the Court accepting as truth their factual assertion that the asserted trade secrets are "readily ascertainable" in light of a publication.  But whether trade secrets are "readily ascertainable" relates to an element of a trade secret claim—whether the asserted information qualifies as a trade secret—and therefore goes to the ***merits*** of a DTSA claim, not the court's ***jurisdiction*** to

hear a DTSA claim. *See Oakwood*, 999 F.3d at 905. Otherwise, anytime that a court decided that a plaintiff's claim was not meritorious, it would immediately lose jurisdiction. That is plainly not the law, and Defendants cite no authority supporting that result.

Resolving whether Praxis' trade secrets are "readily ascertainable" would require the Court to decide contested, highly technical questions. Defendants present this as an easy task in which the Court can readily determine whether chemical differences in pairs of compounds are simple modifications that would be obvious to a skilled medicinal chemist. In making this argument, Defendants falsely equate the minor modifications that Praxis alleges Actio made to Praxis' trade secret compounds with the far more significant modifications that would be required to move from the public Compound 31 to Praxis' trade secret compounds. (Br. at 12–15.) More fundamentally, it is the role of the trier of fact to determine the substance of what the public materials disclose or do not disclose; and whether a "medicinal chemist" could derive the specific unpublished Praxis compounds and associated data by making "minor" modifications to Compound 31. Those questions are not properly considered on a 12(b)(1) motion; as the Third Circuit has cautioned, courts "must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion". *Davis*, 824 F.3d at 348. Rather, "[w]hen a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action, the ***proper procedure for the district court is to find that jurisdiction exists*** and to deal with the objection as a direct attack on the merits of the plaintiff's case". *Id.* (emphasis added) (internal quotations omitted).

*Davis* is instructive. The defendant argued that the plaintiff lacked Article III standing on the ground that plaintiff's "alleged injury [was] not fairly traceable to [defendant]'s conduct" because defendant's subsidiary was responsible for the harm. *Id.* at 347. In vacating

9

the district court's dismissal, the court observed that defendant's motion was "better understood as a well-disguised challenge to the legal merits of [plaintiff]'s case, not as a challenge to his standing to pursue it". *Id.* The Third Circuit cautioned against "empowering the defendant to buttress its legal arguments with factual assertions that contradict those in the complaint" and held that the district court had subject matter jurisdiction. *Id.* at 348. The *Davis* court explained that dismissal for lack of federal question jurisdiction is warranted "***only*** [when] the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this [c]ourt, or otherwise completely devoid of merit as not to involve a federal controversy". *Id.* at 350 (emphasis added) (internal citation omitted). Defendants do not meet this standard. As in *Davis*, they challenge the legal merits of Praxis' trade secret claim—whether the trade secrets are "readily ascertainable"—which is not a jurisdictional challenge to be resolved under Rule 12(b)(1).

None of the seven cases Defendants cite support their contention that this Court should accept as true their contention that Praxis has not pleaded a DTSA claim because its compounds are "readily ascertainable"—and then find that the Court lacks jurisdiction. (Br. 15–16.) Five of the cases were not decided under Rule 12(b)(1). *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1330 (Fed. Cir. 2013) (affirming dismissal of a MUTSA claim under 12(b)(6)); *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 716 (Fed. Cir. 2021) (reversing denial of judgment as a matter of law after the jury found trade secret liability); *Elias Ind., Inc. v. Kissler & Co., Inc.*, No. 2:20-cv-01011-CCW, 2021 WL 2141509, at *2, 10 (W.D. Pa. May 26, 2021) (decided under Rule 12(b)(6)); *Medquest Ltd. v. Rosa*, No. 21 Civ. 5307 (PGG), 2023 WL 2575051, at *1 (S.D.N.Y. Mar. 20, 2023) (same); *TECH USA, Inc. v. Milligan*, No. RDB-20-0310, 2021 WL 795151, at *1 (D. Md. Mar. 1, 2021) (same).

10

The remaining cases do not support Defendants' position.  In *SouthStar*, the court converted a 12(b)(1) challenge into a 12(b)(6) challenge because the jurisdictional challenge overlapped with the merits of the underlying claim.  *SouthStar Expl., LLC v. 7C Land & Mins., Co.*, No. CIV-17-517-SLP, 2018 WL 8755873, at *3 (W.D. Okla. Mar. 15, 2018) ("Because the existence of subject-matter jurisdiction overlaps with the issue of whether [p]laintiff has stated a claim asserted pursuant to the DTSA, the Court applies the Rule 12(b)(6) and the *Twombly*/*Iqbal* pleading standard to both inquiries.").  Here, Defendants have also moved under Rule 12(b)(6).

The court in *R.J. Heating* dismissed a DTSA claim under Rule 12(b)(1), but the decision turned on pleading failures not present here.  In that case, the plaintiff did "not establish what information . . . [was], in fact, trade secrets" nor "assert which trade secrets trigger the DTSA".  *R.J. Heating Co. v. Rust*, No. 1:22-CV-00710, 2024 WL 1307114, at *3 (N.D. Ohio Mar. 27, 2024).  Because the court was unclear about what "trade secret" the plaintiff alleged was purportedly misappropriated, the court noted that the information the plaintiff "*might* be alluding to"—the identity of two suppliers to the HVAC companies—was "generally known in the industry." *Id.*  Here, the Complaint specifically identifies 14 of Praxis' candidate KCNT1 inhibitor compounds that Defendants are alleged to have misappropriated.  (Compl. ¶¶ 69–70.)

Defendants fail to identify any pleading failure that would justify dismissal under Rule 12(b)(1).  Instead, their challenge is limited to the factual question of whether the (properly pleaded) trade secrets in fact qualify as trade secret because they were allegedly "readily ascertainable".  That complex, technical factual question cannot be resolved under Rule 12(b)(1).

### B.     Defendants' 12(b)(6) Argument Fails Because They Raise Factual Disputes, Not Pleading Deficiencies.

Defendants repackage their flawed 12(b)(1) argument as a 12(b)(6) motion, arguing that Praxis has not plausibly alleged trade secrets because its compounds were

supposedly "readily ascertainable" from public disclosures with only "minor" modifications. (Br. 16–17.)  Defendants also argue Praxis has not plausibly alleged misappropriation because its allegations are speculative and made on "information and belief".  (Br. 17–19.)  Neither argument carries the day.  To plausibly allege a cause of action under the DTSA, plaintiffs must only "demonstrate (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret".  *Oakwood*, 999 F.3d at 905 (internal quotation marks and citations omitted).  The Complaint easily satisfies that standard.

### 1.      Praxis adequately pleaded that it has protectible trade secrets.

"To plead the existence of a trade secret in a misappropriation claim brought under the DTSA, [plaintiffs] must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectible as such".  *Oakwood*, 999 F.3d at 905.  A trade secret is protectible if "the owner of the information has taken reasonable measures to keep it secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information".  *Id.* (internal quotations and citations omitted).

Praxis' Complaint meets this standard.  Over the course of 12 paragraphs, the Complaint identifies Praxis' compounds and associated data as the trade secrets at issue and later provides 14 exemplar compounds.  (Compl. ¶¶ 19–30, 69–70.)  Praxis also alleges, over the course of seven paragraphs, the reasonable measures it took to protect its trade secrets, including by executing confidentiality agreements.  (Compl. ¶¶ 37–43.)  Over the course of six paragraphs,

Praxis alleges that its trade secrets derive independent economic value by explaining that they provide Praxis with a "competitive advantage" over its competitors in the KCNT1 space, and that their value "would be severely reduced or even eliminated if Praxis' competitors were to become aware of its confidential and proprietary KCNT1 compounds and related information". (Compl. ¶¶ 31–36.)  Accepting all these allegations as true and drawing all reasonable inferences in favor of Praxis, it is more than plausible that Praxis has protectible trade secrets.

Defendants do not (and, in fact, cannot) dispute these allegations.  Instead, they fault Praxis for "fail[ing] to come forward with any plausible allegations to show that its alleged trade secrets are not readily ascertainable".  (Br. 17.)  But that misstates the pleading standard. The DTSA requires allegations that the information *derives value* from not being generally known and not being readily ascertainable.  *Oakwood*, 999 F.3d at 905.  Praxis alleges exactly that by pleading competitive advantage and loss of value upon disclosure.  (Compl. ¶¶ 33–36.) There is no additional requirement that plaintiffs must separately plead that their trade secrets are "not readily ascertainable".  *Cf. Disruptive Res., LLC v. Ballistic Barrier Prods. Inc.*, No. 1:24-CV-00321, 2025 WL 2879447, at *14 (D. Del. Oct. 9, 2025) ("The [a]mended [c]omplaint provides several categories of information that [p]laintiff considers trade secrets, and specifies the measures taken to protect this information.  At the motion to dismiss stage, viewing all facts in favor of the non-movant, the Court concludes that [p]laintiff has sufficiently pled its trade secret misappropriation claim.").  Indeed, it would be impracticable, and most likely impossible, for every trade secret plaintiff to be forced to prove a negative—that its trade secrets are not "readily ascertainable" through public sources—in its complaint other than by pleading, as Praxis has, that the trade secrets are not public and that the plaintiff takes steps to protect them.

13

Instead of identifying a pleading deficiency, Defendants raise a factual dispute about whether the trade secrets are, in fact, "readily ascertainable".  Defendants ask the Court to determine, as a matter of law under Rule 12(b)(6), that Praxis' trade secrets are not protectible because a medicinal chemist could supposedly "readily ascertain" Praxis' trade secrets from Compound 31.  But determining whether the differences between the compounds are "minor" requires resolving contested technical questions and drawing inferences in *Defendants'* favor— something the Court may not do.  *See Hartig*, 836 F.3d at 268 (court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them *in the light most favorable to the nonmovant*" (emphasis added)).

While the Court need not reach this issue now, because a motion to dismiss is not the appropriate avenue for factual disputes, *see Doe*, 30 F.4th at 342, Praxis' trade secrets are *not* "readily ascertainable" from its public disclosures.  Defendants, recognizing that Praxis did not disclose any of its asserted trade secret compounds in the 2021 Griffin article, have no choice but to characterize the differences between the compounds in the Complaint and those in the article as "minor".  (Br. at 12.)  They then attempt to equate the minor modifications *they* made to Praxis' compounds to ones they posit a medicinal chemist could hypothetically make (but did not actually make) to the compounds disclosed in the Griffin article, such as Compound 31.  (Br. at 13–14.)  That immediately creates a fact issue that the Court cannot resolve in Defendants' favor on a Rule 12(b)(6) motion.  Moreover, it is clear from a simple examination that the differences between the trade secret compounds and those of the Griffin article are *not* the same as those "that Praxis has alleged 'would naturally occur to a medicinal chemist'".  (Br. at 14–15.)

The Complaint identifies 14 exemplary Praxis confidential compounds that bear a "striking structural resemblance" to Actio's compounds.  (Compl. ¶¶ 69–70.)  Praxis explained

14

that the chemical structures of the Praxis and Actio compounds are "extremely similar" and show that Defendants misappropriated Praxis' trade secrets.  (Compl. ¶¶ 72, 75.)  Praxis explained that the "primary difference" consists "merely of a single 'ring closing' in the core", where chemical bonds are formed to "transform a[n] open chain of atoms into a closed ring".  (Compl. ¶ 72.) Praxis noted some additional differences, such as differences in the location or identity of the non-carbon atoms in the lefthand ring of the core, that, "in the context of these molecules", are "minor" and "would naturally occur to a medicinal chemist performing development work". (Compl. ¶ 74.)  The rest of the Actio structures correspond directly to the Praxis compounds.

Defendants argue that, like the Praxis-Actio compound pairings, Praxis' trade secret compounds differ from Compound 31 in ways the Complaint characterizes as "minor". That is utterly false.  The differences between the two Praxis trade secret compounds discussed in Defendants' motion and Compound 31 are both more numerous and different in kind from those described in the Complaint for the Praxis-Actio pairs.  For example, we have annotated Defendants' diagram for PRX-5525 to show the major differences between it and Compound 31.



Defendants ignore most of these differences.  Instead, Defendants argue that the added ethyl group in PRX-5525 (difference #3) is "akin to the 'ring closing' modification" that

Praxis describes in the Complaint (and thus, is "minor"). (Br. 8.) Not so. A "ring closing" typically involves "the formation of a single chemical bond between carbon atoms to **form the 'ring'**". (Compl. ¶ 72 (emphasis added).) Indeed, as depicted below, a ring closure is the *only* difference between PRX-5525 (trade secret) and Actio's I-42a.



(Compl. ¶ 72 (annotated).) In contrast, the ethyl group in PRX-5525 does not "form [a] ring" because it is not connected to any carbons on the right-hand side, as shown below.



(Br. 7. (annotated)) Thus, PRX-5525 is not "readily ascertainable" from Compound 31.

The other Praxis trade secret Defendants attack in their motion, PRX-6720, is also not "readily ascertainable" from Compound 31. (*See* Br. 8.) As shown in the diagram below, there are at least five differences between those compounds, including the addition (difference #3) and subtraction (difference #4) of a methyl group in PRX-6720. Those changes are not a part of any "ring closing" modification because no ring is formed, and the shifting of the methyl group would instead be expected to affect the compound's size and shape.

16



Whether these differences between Compound 31 and PRX-6720 and PRX-5525 are, as Defendants suggest, "minor" is a disputed factual issue. Because this is a motion to dismiss, that factual issue must be resolved in Praxis' favor. *See Hartig*, 836 F.3d at 268 (court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them ***in the light most favorable to the nonmovant***" (emphasis added)). Once those questions are determined in Praxis' favor, it becomes clear that Defendants have no basis for contending that Praxis' DTSA claim is not plausible.

This Court typically declines to undertake factual comparisons between asserted trade secrets and public disclosures on a motion to dismiss. *E.g.*, *Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*, No. CV 23-328-JLH-CJB, 2025 WL 2443517, at *5–6 (D. Del. May 1, 2025). In *Biohaven*, the defendants argued that the plaintiff's trade secrets were disclosed in related patent materials. The Court rejected that argument because comparing the public disclosures to the asserted trade secrets involved subject matter that was "quite complex" and the Court was "ill-suited to resolve this uncertainty at the pleading stage". *Id.* at *6. The Court therefore denied the defendants' motion to dismiss, noting that it "cannot conclude that it is

implausible" that the asserted trade secrets were, in fact, secret.  *Id.*  This case compels the same

result:  Defendants' position turns on complex chemistry and technical issues that are disputed.

Moreover, Defendants ignore *12* compounds that Praxis identified in its

Complaint as having been misappropriated.  For example, ████████ could not be "readily

ascertained" from Compound 31. ████████████████████████████████, while Griffin's

Compound 31 has a ████████████ in that position.



(Br. 7 (annotated); Compl. ¶ 69 (annotated).)  Defendants do not argue that the Complaint

characterized such a ████████ as "minor"; indeed, the Complaint does not discuss it at all.

Defendants never explain how ████████ or the other 11 compounds they ignore

are "readily ascertainable" from public materials.  They instead rely on the unsupported assertion

that "[e]ach of the allegedly trade secret Praxis compounds in Complaint . . . has nearly all of its

structure in common with Compound 31 (or in common with one of the other related compounds

disclosed in Griffin and/or Praxis' 2020 published application)".  (Br. 14–15.)  Defendants ask

the Court to *infer*, based on their "analysis" of *two* compounds, that the differences between each

and every one of Praxis' trade secret compounds and Compound 31 are "minor".  But the Court

must construe all "allegations and reasonable inferences in a light most favorable *to the*

*plaintiff*".  *Oakwood*, 999 F.3d at 904.  Here, Defendants have not made *any* showing that 12

compounds are "readily ascertainable" and so, their motion is facially insufficient.  *See*

*Biohaven*, 2025 WL 2443517 at *5 (refusing to dismiss when defendants could not rebut all of plaintiff's trade secrets without the court making detailed factual comparisons)

Defendants' cases are not to the contrary. (*See* Br. 16–17.) In *Space Data*, the court dismissed a trade secret claim because the plaintiff's "high level overview" failed to put defendants on "notice" of the trade secrets. *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). In *Berkadia*, the court dismissed, and granted leave to amend, because the plaintiff asserted trade secret protection over broad categories of information that are *de facto* public (*e.g.*, names or addresses of consumers). *Berkadia Real Est. Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2022 WL 3213113, at *10 (D. Ariz. Aug. 9, 2022). Neither case addresses the question whether specific trade secrets are "readily ascertainable" through required modifications of public disclosures.

### 2.    Praxis adequately pleaded misappropriation.

Defendants' criticism of the Complaint's use of allegations based "on information and belief" is misplaced. Such allegations are permitted where, as here, the specific details of misappropriation are uniquely in Defendants' possession. *See DermaFocus LLC v. Ulthera*, 201 F. Supp. 3d 465, 468 (D. Del. 2016) ("The Third Circuit has held 'pleading upon information and belief to be permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control.'" (internal citation omitted)).

Praxis provides an adequate factual basis—access, overlap, timing and striking similarity—for its misappropriation claim, which, "especially at the pleading stage, can flow from circumstantial evidence alone". *Oakwood*, 999 F.3d at 910. Praxis alleges that Defendants, through Goldstein, had "essentially unfettered access" to Praxis' trade secrets, including "all Scientific Advisory Board presentations, as well as all information stored in the Box account that Praxis used to share documents internally". (Compl. ¶¶ 50.) The Complaint details how

19

Goldstein was contractually obligated not to misuse Praxis' trade secrets and confidential information, including after he formed Actio, a competing company, while still associated with Praxis. (Compl. ¶¶ 51–63.) Finally, Praxis supports its misappropriation claim by providing 14 exemplary Praxis compounds with "striking structural similarities" to Actio's, asserting Defendants used Praxis' secret compounds as a template. (Compl. ¶¶ 69–76.) Those allegations plausibly support an inference that Defendants misappropriated Praxis' trade secrets.

Defendants' arguments that "Actio's work occurred years later", "Goldstein is not listed as an inventor on the Actio patent applications", and Actio's compounds are different from Praxis' compounds (Br. 17), do not defeat plausibility. Later patent filings are consistent with misappropriation; alleged inventorship of the fruit of the misappropriation has no bearing on liability; and misappropriation includes ***using*** the secret information—even if the end products are not identical. *See Oakwood*, 999 F.3d at 910. ("the 'use' of a trade secret encompasses all the ways one can take advantage of trade secret information"). At bottom, these arguments assert a merits-based defense to the claims, and do not establish the implausibility of the claims.

Defendants attempt to fault Praxis for not adequately "explain[ing] why Actio could not have arrived at the accused compounds through independent development as opposed to misappropriation" (Br. 18), but that is not Praxis' burden. *Oakwood*, 999 F.3d at 913 ("[W]hether [defendant] could have developed its microsphere product using proper means is irrelevant. The question at the pleading stage is simply whether [plaintiff] provided allegations of misappropriation sufficient to 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true'" (internal citation omitted)).

## VI.    CONCLUSION

Praxis respectfully requests that the Court deny Defendants' motion to dismiss or, in the alternative, permit Praxis to amend its Complaint.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Praxis Precision Medicines, Inc.*

OF COUNSEL:

Keith R. Hummel
Sharonmoyee Goswami
Jonathan D. Mooney
Geoffrey G. Hu
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY  10001
(212) 474-1000

January 9, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 9, 2026, upon the following in the manner indicated:

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19081
*Attorneys for Defendants*

Daniel J. Knauss, Esquire                                   *VIA ELECTRONIC MAIL*
HanByul Chang, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304
*Attorneys for Defendants*

Brittany N. Cazakoff, Esquire                               *VIA ELECTRONIC MAIL*
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004
*Attorneys for Defendants*

W. Chad Shear, Esquire                                      *VIA ELECTRONIC MAIL*
Reem Gerais, Esquire
COOLEY LLP
10265 Science Center Drive
San Diego, CA  92121
*Attorneys for Defendants*


                                        */s/ Anthony D. Raucci*
                                        _____
                                        Anthony D. Raucci (#5948)