IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRAXIS PRECISION MEDICINES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID B. GOLDSTEIN and ACTIO ) <br> BIOSCIENCES, INC., ) <br> ) <br> Defendants. ) | C.A. No. 25-1256-RGA |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) and/or 12(b)(6)**

OF COUNSEL:
W. Chad Shear
Reem Gerais
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
(858) 490-6000

Daniel J. Knauss
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Brittany N. Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800

Dated: January 16, 2026

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants David B.
Goldstein and Actio Biosciences, Inc.*

# TABLE OF CONTENTS

                                                                                                                                **Page**

I.    PRAXIS' TRADE SECRET ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE DTSA ................................................................................................... 1

        A.    Defendants' Rule 12 Motion Is Based on Praxis' Own Allegations and Its Own Public Disclosures of KCNT1 Inhibitors ....................................................... 1

        B.    Dismissal Under Rule 12(b)(1) or 12(b)(6) Is Appropriate ................................... 5

II.   PRAXIS' MISAPPROPRIATION ALLEGATIONS DO NOT MEET RULE 12'S PLAUSIBILITY STANDARD ........................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 8

*Battaglia Mgmt., Inc. v. Abramowicz*,
  No. 23-615-GBW, 2024 WL 3183063 (D. Del. June 26, 2024) ................................... 3

*Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*,
  No. CV 23-328-JLH-CJB, 2025 WL 2443517 (D. Del. May 1, 2025) ................... 4, 5

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) ......................................................................................... 6

*Greenthread, LLC v. ON Semiconductor Corp.*,
  No. 23-443-RGA, 2023 WL 7691632 (D. Del. Nov. 15, 2023) .................................... 4

*M2M Sols. LLC v. Telit Commc'ns PLC*,
  No. CV 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ............................. 4

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ......................................................................................... 8

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) .......................................................................... 1, 3, 9, 10

*R.J. Heating Co. v. Rust*,
  No. 1:22-cv-00710, 2024 WL 1307114 (N.D. Ohio Mar. 27, 2024) ............................ 6

*SouthStar Expl., LLC v. 7C Land & Mins.*,
  Co., No. CIV-17-517-SLP, 2018 WL 8755873 (W.D. Okla. Mar. 15, 2018) .............. 6

*Spirits v. Ragghianti*,
  No. 23-2913, 2024 WL 3177773 (3d Cir. June 26, 2024) ........................................... 3

*ViaTech Techs., Inc. v. Microsoft Corp.*,
  No. 17-570-RGA, 2018 WL 4126522 (D. Del. Aug. 29, 2018) ................................... 8

**Statutes**

18 U.S.C. § 1839 ................................................................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 12 ..................................................................................................... 1, 3, 6

Fed. R. Civ. P. 12(b)(1)...........................................................................................................5

Fed. R. Civ. P. 12(b)(6)...........................................................................................................5

Before Actio ever existed, Praxis publicly disclosed scores of KCNT1 inhibitors both in a scientific journal article and in a patent application. (D.I. 17 at 5-6.) Rather than acknowledge that in their Complaint, Praxis took a handful of KCNT1 inhibitor compounds it says were kept confidential and alleged, based on changes Praxis refers to as "commonplace," that Defendants must have misappropriated those confidential compounds. (*Id*. at 4-5, 7-9.) But by that same rationale, accepting Praxis' allegations as true, a medicinal chemist could just as easily get from Praxis' public compounds to the Actio compounds. Accordingly, Praxis failed to sufficiently plead that it has information entitled to trade secret protection, ***distinct*** from the general knowledge. And beyond that, Praxis' misappropriation allegations fail because its speculative "information and belief" pleading fails to plausibly allege that Defendants misappropriated anything. Indeed, as explained herein, Praxis' preferred *Oakwood* case actually highlights why Praxis' misappropriation allegations based on mere "access" are insufficient to survive Rule 12 scrutiny.

I. **PRAXIS' TRADE SECRET ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE DTSA**

　　A.　**Defendants' Rule 12 Motion Is Based on Praxis' Own Allegations and Its Own Public Disclosures of KCNT1 Inhibitors**

As explained in Defendants' Opening Brief, Praxis made extensive public disclosures of KCNT1 inhibitors with structures related to those at issue in this case. (*See* D.I. 17 at 5-6.) Praxis' 2021 Griffin publication discloses its lead Compound 31 and scores of known modifications to its structure. Praxis' 2020 published patent application already disclosed many of the molecules disclosed in Griffin plus millions of further modifications.[1] (*Id.*) When it accuses Defendants of

---

[1] In their Opening Brief, Defendants explained why this Court can take judicial notice of the fact that Praxis published its lead Compound 31 and modifications thereto in its Griffin 2021 publication, and the fact that Praxis published extensive further structural variants of this family of compounds in its 2020 patent application. (D.I. 17 at 11; D.I. 19.) Praxis' Answering Brief does not dispute that this Court may take judicial notice of these publications and the disclosures which are apparent from the face of the documents.

1

misappropriation, Praxis does not allege, because it cannot, that any accused Actio compound has the same structure as any allegedly trade secret Praxis compound. This is because every one of the accused Actio compounds has a fundamentally distinct two-ring central structure that is absent from every Praxis compound, as shown in the example comparison below, with the central ring region highlighted in orange.

| Praxis Compound(s) | Actio Compound |
|---|---|
| PRX-4001 | I-82b |

(*Id.* at 3-4; Compl. ¶ 70.) And as explained in Defendants' Opening Brief (and apparent through a simple comparison by eye), the accused Actio compounds have other structural differences from their supposed Praxis "counterparts" in a wide variety of ways. (D.I. 17 at 2-3; Compl. ¶¶ 69-70.) To explain away these many differences, Praxis alleges that a wide variety of different types of structural modifications are all "minor" and would "naturally occur" to a medicinal chemist.[2] (*See* D.I. 17 at 4-5.) Praxis alleges such "minor" changes include modifications to the central ring structure—such as changing the non-carbon atoms or closing open structures to form new rings— and differences in the functional groups "in the side of the molecule." (*Id.* at 7-9, 12-16.)

Praxis ignores these public disclosures, does not explain why it did not mention them in its Complaint, and makes no attempt to address the Complaint's deficiencies. Praxis's Complaint

---

[2] As Defendants explained in their Opening Brief, they strenuously disagree that Actio's unique compounds are not markedly distinct from any Praxis' compound, public or confidential, or that Actio's own compounds were not inventive. (D.I. 17 at 2, 12 n.8.) But at this motion to dismiss stage, taking Praxis' allegations as true, it is clear that Praxis cannot make out a trade secret claim under the law because its alleged trade secrets cannot be distinguished from what is publicly known or within the scope of what Praxis claims are commonplace variations that would naturally occur to a medicinal chemist.

thus fails to plausibly plead a necessary element of its claim: trade secret information ***distinct from*** what is generally known and readily ascertainable.  *See* D.I. 17 at 15–16; *Spirits v. Ragghianti*, No. 23-2913, 2024 WL 3177773, at *4 (3d Cir. June 26, 2024) ("[T]o plead the existence of a trade secret in a misappropriation claim brought under the DTSA, a complaint must allege facts supporting the assertion that the information claimed as a trade secret is indeed protectable as such. To be protectable as a trade secret, in turn, information must derive independent economic value ... from not being generally known." (cleaned up)); *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (plaintiff must describe "the subject matter of the trade secret . . . with sufficient particularity to separate it from matters of general knowledge in the trade"); *Battaglia Mgmt., Inc. v. Abramowicz*, No. 23-615-GBW, 2024 WL 3183063, at *3 (D. Del. June 26, 2024) ("[Plaintiff] bears the burden of identifying how the [alleged trade secrets] are 'not generally known' and 'derive independent economic value from not being known.'")

Instead of attempting to explain how it can have a trade secret given its own extensive public disclosures, Praxis attempts to recast Defendants' argument as a factual dispute raising "contested, highly technical questions." (D.I. 23 at 9.)  Not so.  Defendants' motion is based solely on ***Praxis'*** own public disclosures and ***Praxis'*** own allegations—which the Court must accept as true at this stage—that chemists routinely make various structural modifications to improve the activity of promising lead compounds.  There is nothing in the pleadings to separate the 14 alleged trade secret compounds from what, according to Praxis, are the commonplace modifications that a chemist would make to the undisputedly generally known KCNT1 inhibitor compounds.

Indeed, it is Praxis, not Defendants, who attempt to avoid Rule 12 scrutiny by injecting factual disputes into the briefing.  Incredibly, despite relying on these allegedly "minor" modifications to argue that Defendants misappropriated Praxis' confidential compounds, Praxis

3

now argues that the same chemists would ***not*** find it routine to go from Praxis' public compounds, like Compound 31, to its allegedly secret ones.[3] (D.I. 23 at 15-17.) Apparently, Praxis' theory now is that its allegedly confidential compounds are entitled to DTSA protection because of the ***number*** of modifications necessary to go from public Compound 31 to the confidential compounds. (*Id*. at 15). Thus, for example, Praxis argues that a total of five modifications must be made to convert Compound 31 to PRX-5525 or PRX-6720. Praxis contends, supported solely by attorney argument, that such modifications are supposedly "far more significant," are "major," and would not be routine to a chemist. (*Id*. at 9, 15-17.)

As an initial matter, this attorney argument cannot save Praxis' deficient Complaint. *Greenthread, LLC v. ON Semiconductor Corp.*, No. 23-443-RGA, 2023 WL 7691632, at *2 (D. Del. Nov. 15, 2023) ("A party cannot use a brief to remedy deficiencies in the allegations of a complaint."); *see also M2M Sols. LLC v. Telit Commc'ns PLC*, No. CV 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015). Beyond that, according to Praxis' ***own allegations*** in its Complaint, an even wider variety of chemical modifications—such as changing atoms in the central core or closing open bonds to form new rings—and changes to functional groups in the side of the compound, all are routine changes that "would naturally occur to a medicinal chemist." (D.I. 17 at 4-5; Compl. ¶¶ 72, 74.) Thus, for example, under the *Biohaven* case cited by Praxis, the pleadings are "problematic" because they do not enable the court to "easily distinguish between what alleged trade secret information was publicly disclosed in a patent and what was not, as this

---

[3] Praxis also wrongly contends that Defendants "cherry-pick" just two of Praxis allegedly trade secret compounds, and "ignore" the other twelve. (D.I. 23 at 3, 5). This is not correct. In fact, Defendants provided two detailed exemplars of how, under Praxis' own allegations, the allegedly trade secret compounds are readily ascertainable. Defendants further addressed the remaining alleged Praxis trade secret compounds as all involving the same types of modifications that Praxis itself alleges are routine. (D.I. 17 at 6, 9, 15.)

4

suggests that a plaintiff has not identified the relevant trade secrets with sufficient specificity." *Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*, No. CV 23-328-JLH-CJB, 2025 WL 2443517, at *5 (D. Del. May 1, 2025); *citing Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382-83 (3d Cir. 2021).

### B. Dismissal Under Rule 12(b)(1) or 12(b)(6) Is Appropriate

Dismissal under Rule 12(b)(1), in addition to 12(b)(6), is appropriate here because Praxis cannot sufficiently plead the first element of a DTSA claim – existence of a trade secret – when its own allegations make that element implausible, especially given the multitude of its own public disclosures of KCNT1 inhibitors. To try to get around that failure, Praxis argues that dismissal under Rule 12(b)(1) is legally unsound because Defendants are disguising a readily ascertainable "defense" as a jurisdictional attack. (D.I. 23 at 1). But this is disproven by Praxis' own admission that the existence of a trade secret is an "*element*" of a DTSA claim, and that the definition of a trade secret under the DTSA requires that the alleged secret not be readily ascertainable by proper means. (*Id.* at 8 (emphasis added)). On this score, Praxis is correct: the DTSA expressly specifies that information cannot be a trade secret if it is generally known or readily ascertainable by proper means. *See* 18 U.S.C. § 1839 (definition (3)).

As a result, it is Praxis who bears the burden of sufficiently pleading that its allegedly secret compounds are entitled to trade secret protection under the DTSA as being generally known or readily ascertainable, and Praxis failed to do so. Praxis does not meaningfully engage with the holdings of Defendants' cases in which trade secret claims were dismissed because the alleged trade secrets were readily ascertainable, other than the *RJ Heating* case. (*See, e.g.,* D.I. 17 at 15-16.) Praxis' attempt to distinguish *RJ Heating* (which dismissed a DTSA claim under Rule 12(b)(1)) fails. There, as here, the complaint allegations failed to establish information entitled to trade secret protection because plaintiff failed "to separate the trade secret from matters of general

5

knowledge in the trade or special knowledge of persons skilled in the trade." *R.J. Heating Co. v. Rust*, No. 1:22-cv-00710, 2024 WL 1307114, at *3 (N.D. Ohio Mar. 27, 2024).  Praxis' extensive reliance on *Davis* is misplaced, because *Davis* only involved a subject matter jurisdiction challenge based on ***contesting*** facts in the pleadings.  *Davis v. Wells Fargo,* 824 F.3d 333, 346-47 (3d Cir. 2016).  By contrast, Defendants' Rule 12 challenge here ***accepts*** Praxis' allegations as true for the purposes of its motion arguing that Praxis failed to plead a necessary element of its DTSA claim.

Finally, Praxis concedes that Defendants' *SouthStar* case was decided under both Rule 12(b)(1) and Rule 12(b)(6); indeed, Praxis' Answering Brief notes that *SouthStar* explained that "the existence of subject-matter jurisdiction ***overlaps with*** the issue of whether [p]laintiff has stated a claim asserted pursuant to the DTSA." (D.I. 23 at 11 (emphasis added) (citing *SouthStar Expl., LLC v. 7C Land & Mins*., Co., No. CIV-17-517-SLP, 2018 WL 8755873, at *4 (W.D. Okla. Mar. 15, 2018)).)  Thus, far from being "novel," Defendants' 12(b)(1) attack is supported by the law and based on the commonsense notion that subject matter jurisdiction cannot lie when an essential element of a DTSA claim is defectively pleaded.

## II.   PRAXIS' MISAPPROPRIATION ALLEGATIONS DO NOT MEET RULE 12'S PLAUSIBILITY STANDARD

Praxis also fails to plausibly plead misappropriation.  Its allegations based on mere "access" and structural similarity are clearly insufficient to allege that misappropriation was not just possible, but plausible.  In response, Praxis simply doubles down on its speculation, pointing to its Complaint, which only alleges that Dr. Goldstein had "access" to documents containing certain Praxis KCNT1 inhibitors that Praxis argues were confidential at the time Dr. Goldstein was associated with Praxis.  Beyond that, all of Praxis' allegations, based solely on "information and belief," merely ***speculate*** that Dr. Goldstein (and Actio) must have used this confidential information to develop their own, undisputedly different, KCNT1 inhibitors.  This purely

6

speculative conjecture ignores that—in light of Praxis' own allegations about how chemists routinely modify compounds—Defendants could easily have arrived at their unique KCNT1 inhibitors by a route that began with the undisputedly public compounds disclosed in Griffin 2021 and Praxis' 2020 patent application. As such, Praxis' misappropriation allegations fail to cross the threshold from mere possibility to plausibility, and thus fail to state a claim.

To try to defend its allegations, Praxis argues that the combination of "access, overlap, timing and striking similarity" is sufficient to plausibly allege misappropriation. (D.I. 23 at 19.) But each of these fail under scrutiny. *First*, as to "access" and "overlap," Praxis' Complaint conspicuously fails to allege that Dr. Goldstein ever examined or downloaded any of the relevant Praxis documents or information while associated with Praxis, that Dr. Goldstein ever took any Praxis confidential information with him after separating from Praxis, and that anyone at Actio other than Dr. Goldstein ever had access to Praxis' confidential information at any time. What *is* undisputed is that Dr. Goldstein and Actio, like everyone in the world, had unfettered access to Praxis' many publications of its lead Compound 31 and scores of potential modifications thereto which date back to 2020, well before the 2021 founding of Actio and three years before the publication of Actio's patent application that allegedly resulted from the alleged misappropriation.

*Second,* as to "timing," in fact, Praxis' Complaint makes no plausible allegations that the timeline of Actio's development of its unique compounds is inconsistent with independent development. Often, in trade secret cases involving alleged "use," the plaintiff provides *plausible* allegations that defendants received a "head start" or a similar unfair timing advantage, based on *plausible* allegations that defendants could not have independently developed their accused work without having used plaintiff's confidential information. Praxis' only allegations as to misappropriation, such as merely invoking the words "head start," are precisely the type of bald

7

assertions that this Court need not accept when weighing a motion to dismiss. *See, e.g.*, *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997); *ViaTech Techs., Inc. v. Microsoft Corp.*, No. 17-570-RGA, 2018 WL 4126522, at *1 (D. Del. Aug. 29, 2018).

Tellingly here, the facts as admitted by Praxis' own Complaint show why Praxis cannot plausibly allege any "head start." Praxis concedes that Actio was not even incorporated until July 2021, Dr. Goldstein separated from Praxis by April 2022, and the earliest patent filing of Actio's work on its unique KCNT1 inhibitors did not begin until more than a year later, in November 2023. (Compl. ¶¶ 61, 63, 76.) Indeed, Praxis' own Complaint concedes that in a mere matter of "months," Actio could "conceptualize its new compounds, acquire the starting materials, synthesize the compounds, characterize them by assay, and design further iterations of molecules through structure-activity relationship assays" all without misappropriation. (Compl., ¶ 76.) Beyond these admissions, Praxis fails to offer any plausible allegations that Actio's path to development of its unique compounds was suspiciously quick or easy. Praxis thus fails to allege, as it must, any facts that are more than "merely consistent" with liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Third*, as to "striking similarity," Praxis' many allegations about the supposedly routine nature of structural modifications, if accepted as true, mean that similarity alone does not move the needle from possibility to plausibility, as required. According to Praxis' view of the world, it would be trivial for a chemist to modify its allegedly trade secret inhibitors to arrive at Actio's undisputedly unique compounds. Even if those allegations are accepted as true (as they must be at this stage), there is nothing beyond pure conjecture to make it plausible (not just possible) that Actio used a Praxis confidential compound as a starting point as opposed to starting from the huge number of publicly known Praxis compounds that are *also* structurally related.

As explained above, Praxis' concocted hierarchy of "major" vs. "minor" modifications does not save its claims. At most, Praxis' argument is that the mere **number** of changes necessary to modify Compound 31 to arrive at a confidential Praxis compound means that its misappropriation allegations are plausible. But that argument cannot hold because Praxis itself alleges that a vast array of types of modifications would all be routine to a chemist. Thus, there is nothing in Praxis' allegations to plausibly explain why Actio's chemists could not have made more than one such modification to Praxis' public compounds to arrive at its own unique inhibitors. The mere **number** of changes needed does not make Praxis' allegations plausible because, according to Praxis, chemists routinely make multiple such modifications to create new compounds from known ones. The converse is also true: even if **fewer** changes would have been needed to go from an allegedly trade secret Praxis compound to an accused Actio compound, that alone does not make misappropriation plausible, especially in light of Praxis' own allegations about how medicinal chemists work.

Praxis contends that it has no burden to make misappropriation allegations that go any further than its pleadings, (D.I. 23 at 20), but Praxis is wrong. In the context of its own extensive public disclosures of starting points for KCNT1 inhibitors and its allegations about how such molecules can be routinely modified by chemists, Praxis **does** have the burden of making plausible allegations to show why liability here is not just possible but plausible. Praxis repeatedly cites the *Oakwood* case, (*Id.* at 19-20), but this case actually shows why Praxis' misappropriation allegations fail. In *Oakwood*, misappropriation allegations were found plausible because the plaintiff pleaded several facts that Praxis fails to plead here. *See Oakwood*, 999 F.3d 892. For example, the plaintiff in *Oakwood* pleaded that misappropriation was plausible because the defendant hired a scientist with highly specialized knowledge of trade secrets away from the

9

plaintiff, after first approaching the plaintiff about a collaboration. *Id.* at 912. What's more, the complaint in *Oakwood* alleged that defendants engaged in deception about the work that the scientist would perform, and that defendants developed products on a timeline which was not plausible absent misappropriation given that defendants lacked experience in a highly specialized field and made only a small investment. *Id.*

*None* of those kinds of facts are pleaded by Praxis. Praxis does not (and cannot) allege that Actio hired Dr. Goldstein away from Praxis or that it sought a collaboration on KCNT1 with Praxis, that Actio lacks the skills or resources to independently develop its own KCNT1 inhibitors, or that the time and resources Actio devoted to develop its inhibitors provide evidence of misappropriation. Indeed, as noted above, Praxis' own Complaint admits that Actio could have developed its compounds in a matter of months, (Compl. ¶76), and yet ignores that Praxis began publishing scores of its KCNT1 inhibitors in November 2020 and March 2021, before Actio was even founded and years earlier than Actio's November 2023 patent filing. The most that Praxis pleads in terms of the conduct of the parties is that Dr. Goldstein had "access" to allegedly trade secret compounds, but the court in *Oakwood* specifically noted that pleading mere access, without more, can be insufficient to plausibly plead misappropriation without requiring speculation. *Oakwood*, 999 F.3d at 912 n.19 ("That circumstance is not unlike a misappropriation claim where use of a trade secret is predicated solely on a competitor's access to the plaintiff's former employee. Without more, the circumstantial evidence may leave ambiguous the lawfulness of the competitor's conduct. Indeed, we could be left to speculate not only on the competitor's motivations for hiring the plaintiff's former employee but also on the former employee's conduct itself.") *Oakwood* thus highlights why Praxis' misappropriation allegations are too speculative to survive dismissal.

|  |  |
|---|---|
| | */s/ Nathan R. Hoeschen* |
| | Karen E. Keller (No. 4489) |
| | Nathan R. Hoeschen (No. 6232) |
| OF COUNSEL: | SHAW KELLER LLP |
| W. Chad Shear | I.M. Pei Building |
| Reem Gerais | 1105 North Market Street, 12th Floor |
| COOLEY LLP | Wilmington, DE 19801 |
| 10265 Science Center Drive | (302) 298-0700 |
| San Diego, CA 92121 | kkeller@shawkeller.com |
| (858) 490-6000 | nhoeschen@shawkeller.com |
| | *Attorneys for Defendants David B. Goldstein* |
| Daniel J. Knauss | *and Actio Biosciences, Inc.* |
| HanByul Chang | |
| COOLEY LLP | |
| 3175 Hanover Street | |
| Palo Alto, CA 94304 | |
| (650) 843-5000 | |

Brittany N. Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800

Dated: January 16, 2026