**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PRAXIS PRECISION MEDICINES, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DAVID B. GOLDSTEIN AND ACTIO BIOSCIENCES, INC.,**<br><br>**Defendants.** | **Court No. 1:25-cv-01256-JCG** |

## OPINION AND ORDER

Choe-Groves, Judge: Before the Court is a dispute between Praxis Precision Medicines, Inc. ("Plaintiff") and Defendants David B. Goldstein and Actio Biosciences, Inc.[1] ("Actio") (together, "Defendants") regarding whether the Court should enter a Protective Order that excludes in-house counsel access to information designated as "Highly Confidential Information – Attorneys' Eyes Only" in this action and whether there should be a temporal limitation on the preparation of witnesses using protected material. See Pl.'s Ltr. Protective Order Dispute ("Pl.'s Ltr.") (D.I. 47); Defs.' Ltr. Protective Order Dispute ("Defs.' Ltr.") (D.I. 53). The Parties each submitted letters, and the Court held a discovery

[1] Defendant Actio was acquired by Jazz Pharmaceuticals plc ("Jazz") in September 2026. See Pl.'s Ltr. at 1 & Ex. B; Defs.' Ltr. at 1.

conference on November 18, 2026. Oral Order (D.I. 48). For the reasons discussed below, the Court grants in part and denies in part Plaintiff's requests related to the proposed Protective Order, and orders the Parties file an amended joint proposed Protective Order on or before December 7, 2026 in accordance with the restrictions set forth in this Opinion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Rule 26(c) permits protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). A party seeking a protective order carries the burden of showing good cause for its issuance. Shingara v. Skiles, 420 F.3d 301, 305–06 (3d Cir. 2005); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786–87 (3d Cir. 1994).

The United States Court of Appeals for the Third Circuit has established that the factors articulated in Pansy v. Borough of Stroudsburg,[2] 23 F.3d 772 (3d Cir.

---

[2] The court in Pansy established the following factors of the good cause balancing test for protective orders: (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to

1994) are applied when reviewing "orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26." In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig., 924 F.3d 662, 670 (3d Cir. 2019). When determining whether a protective order should prohibit a party's principals or in-house counsel from accessing information, courts in the District of Delaware have considered the "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." Boehringer Ingelheim Pharms., Inc. v. Hercon Lab'ys Corp., No. CIV.A. 89-484-CMW, 1990 WL 160666 (D. Del. Oct. 12, 1990) (quoting U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). "[W]here in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed."[3] U.S. Steel Corp., 730 F.2d at 1468. The

---

public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. Arnold v. Pa., Dep't Transp., 477 F.3d 105, 108 (3d Cir. 2007) (citing Pansy, 23 F.3d at 787–88).

[3] The U.S. Court of Appeals for the Federal Circuit in U.S. Steel Corp. defined "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.)

Court must balance the risk of inadvertent or accidental disclosure against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice. Disruptive Res., LLC v. Ballistic Barrier Prods. Inc., No. 1:24-CV-00321-JCG, 2026 WL 183850, *2 (D. Del. Jan. 23, 2026) (citing In re Deutsche Bank Tr. Co. Am. ("Deutsche Bank"), 605 F.3d 1373, 1380 (Fed. Cir. 2010)). "In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required." Id. (citation omitted).

**DISCUSSION**

Plaintiff proposes a restriction for the Protective Order that excludes in-house counsel from accessing information designated and produced to individuals as "Highly Confidential Information – Attorneys' Eyes Only" as described in Section 8(a) of the Proposed Protective Order. Pl.'s Ltr. at 1; Proposed Protective Order § 8(a) (D.I. 56). The Parties agreed in the Proposed Protective Order that material designated as "Highly Confidential Information – Attorneys' Eyes Only" includes:

> trade secrets, compound structures, IC50 data, structure-activity relationship analyses, assay results, formulations, and other non-public scientific or technical data relating to KCNT1 inhibitor development programs, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing

---

made in light of similar or corresponding information about a competitor." U.S. Steel Corp., 730 F.2d at 1468 n.3.

> strategy, product development information, engineering documents, manufacturing and supply chain information, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

Proposed Protective Order § 2(h). Defendants argue that no good cause has been shown to warrant restricting the access of in-house counsel to this protected information. Defs.' Ltr. at 1. The Court agrees with Plaintiff that there is good cause for the proposed restriction. Plaintiff has a significant private interest in seeking this proposed provision given that Defendants are direct competitors. Pl.'s Ltr. at 1.

The factors for determining the risk of inadvertent disclosure or competitive use are met in this case because the principals impacted by the proposed restriction are involved in competitive decisionmaking. Defendants have submitted declarations for two in-house counsel at Defendant Actio's parent company, Jazz, who are on the team of attorneys and staff that is responsible for litigation. Decl. Christina Seda-Acosta ("Seda-Acosta Decl."), ¶ 2 (D.I. 54); Decl. Daniel Epstein ("Epstein Decl."), ¶ 2 (D.I. 55). Christina Seda-Costa is Corporate Counsel and Daniel Epstein is the Assistant General Counsel and Head of Global Litigation, Legal Operations and Strategy. Seda-Acosta Decl. ¶ 2; Epstein Decl. ¶ 2. Seda-Acosta and Epstein state that they are "not responsible for patent prosecution for Jazz," but these representations do not indicate or provide the Court with any information regarding their respective involvement in trade secret litigation such as

the underlying action. Seda-Acosta Decl. ¶ 3; Epstein Decl. ¶ 3. Both Seda-Acosta and Epstein submit that they are not "responsible" for any competitive decisionmaking at Jazz and that they "do not provide advice to Jazz regarding product pricing, design, or candidate selection." Seda-Acosta Decl. ¶ 4; Epstein Decl. ¶ 4. However, "competitive decisionmaking" broadly includes "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel Corp., 730 F.2d at n.3. In-house counsel roles such as those held by Epstein and Seda-Acosta often involve intimate interaction with management and the operation of their corporation, and Seda-Acosta and Epstein are still involved in competitive decisionmaking as advisors to competitive decisionmakers even if they are not the ones "responsible." See Seda-Acosta Decl. ¶ 4; Epstein Decl. ¶ 4; F.T.C. v. Exxon Corp. ("Exxon Corp."), 636 F.2d 1336, 1350 (D.C. Cir. 1980). Furthermore, Epstein and Seda-Acosta state that they are not involved in "product pricing, design, or candidate selection" or the KCNT1 inhibitor program, but the types of non-public material encompassed in the definition of "Highly Confidential – Attorneys' Eyes Only" includes competitive and business sensitive information related to those issues that could cause Plaintiff harm if inadvertently or accidentally disclosed. See Seda-Acosta Decl. ¶ 4;

Epstein Decl. ¶ 4; Proposed Protective Order § 2(h).

The Court observes that this action concerns allegations of trade secret misappropriation, and that Plaintiff and Defendants are direct competitors. See Compl. ¶ 1; Pl.'s Ltr. at 1. Defendant Actio's in-house counsel Seda-Acosta and Epstein are involved in competitive decisionmaking, and disclosure of Plaintiff's "Highly Confidential Information – Attorneys' Eyes Only" information to them presents a risk of conferring an unfair competitive advantage on Defendants. See PhishMe, Inc. v. Wombat Sec. Techs., Inc., No. CV 16-403-LPS-CJB, 2017 WL 4138961, at *8 (D. Del. Sept. 8, 2017). Defendant Actio has agreed to implement an ethical wall to prevent disclosure or use of protected material in competitive activities such as research or drug discovery, Defs.' Ltr. at 3, but Plaintiff asserted at the discovery conference that this safeguard does not address the concern of inadvertent disclosure of information by in-house counsel in the process of advising competitive decisionmakers. See Nov. 18, 2026 Conf. Rough Tr. 13:24–14:25. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." Deutsche Bank, 605 F.3d at 1378 (quoting Exxon Corp., 636 F.2d at 1350). The Court notes that Defendants are represented by outside counsel who will have unrestricted access to the "Highly Confidential Information – Attorneys' Eyes Only" information. See Proposed Protective Order § 8(a)(ii).

Balancing the risk of inadvertent or accidental disclosure against the potential harm to Defendants from the restriction barring in-house counsel access, the Court concludes that there is good cause to grant Plaintiff's request to exclude in-house counsel access to material designated "Highly Confidential Information – Attorneys' Eyes Only." See Disruptive Res., LLC, No. 1:24-CV-00321-JCG, 2026 WL 183850 at *2.

Plaintiff's letter also requests to restrict access by Defendants' witnesses to material that has designated as "Confidential" or "Highly Confidential" to a thirty-day preparation window prior to giving testimony at a deposition or hearing. Pl.'s Ltr. at 3. The Court heard argument on this issue at the November 18, 2026 discovery conference. The Parties then agreed to meet and confer on a new proposed temporal restriction for the Court to consider.

**CONCLUSION**

Upon consideration of the Parties' letters, proposed Protective Order, and the discovery conference held on November 18, 2026, it is hereby

ORDERED that the request for a restriction against in-house counsel access to protected information designated "Highly Confidential Information – Attorneys' Eyes Only" is granted; and it is hereby

ORDERED that the Parties shall meet and confer regarding a new proposal for a temporal restriction on the preparation of witnesses for testimony using

"Confidential" or "Highly Confidential" material; and it is hereby

ORDERED that the Parties shall file an amended joint proposed Protective Order in accordance with this Opinion on or before December 7, 2026.

IT IS SO ORDERED this 25th day of November, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.